**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------

| | |
|---|---|
| Julie Zanotti, Ronese Brooks, and Sherry Porter, : | |
| On Behalf of Themselves and All Other : | |
| Persons Similarly Situated : | Case No.: 18-cv-05893-NSR |
|                Plaintiffs, : | |

Julie Zanotti, Ronese Brooks, and Sherry Porter,   :
On Behalf of Themselves and All Other   :
Persons Similarly Situated   :  Case No.: 18-cv-05893-NSR
              Plaintiffs,   :
   :

      -against-   :
   :

Invention Submission Corporation d/b/a InventHelp,   :
Technosystems Consolidated Corp., Texhnosystems   :
Service Corp., Western Invention Submission Corp.,   :
Universal Payment Corporation, Intromark Incorporated,   :
Innovation Credit Corp., Robert J. Susa, Invents Company,   :
Invents Company, LLC, Global Express Manufacturing,   :
Smithlily Manufacturing; Zambro Manufacturing Inc.,   :
Abrams Gentile Entertainment, LLC, Abrams Gentile   :
Entertainment Inc., Ashkan Najafi, Esq., RH Patent   :
Consulting LLC, Rachel Gilboy, Thomas Frost, P.A.,   :
Thomas Frost, Law Office of Kyle Fletcher, P.C.,   :
Kyle A. Fletcher, Crossley & Stevenson, Kaufhold   :
&Dix, Ruth Eure, Patents for People, John  Doe   :
Companies 1-10; John Doe Individuals 1-10,   :
   :
              Defendants.   :
-----------------------------------------------------------------------

**MOVING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED**
**COMPLAINT OR TRANSFER VENUE**

**FOX ROTHSCHILD LLP**
Daniel A. Schnapp, Esq.
David J. Garraux, Esq. (*pro hac vice*)
Philip Z. Langer, Esq.
101 Park Avenue, 17th Floor
New York, NY 10178
*Attorneys for Moving Defendants*
*Invention Submission Corporation*
*d/b/a InventHelp, Technosystems*
*Consolidated Corp., Technosystems*
*Service Corp., Western Invention*
*Submission Corp., Universal*
*Payment Corp., Intromark Inc. and*
*Robert J. Susa.*

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

SUMMARY OF ARGUMENT ................................................................................... 1

FACTUAL BACKGROUND ....................................................................................... 2

MOTION TO DISMISS STANDARD ........................................................................ 3

ARGUMENT ............................................................................................................... 4

I.      The Plaintiffs' Claims Do Not Satisfy Article III of the United States Constitution. ........ 4

        A.      Plaintiffs Zanotti and Brooks Do Not Have Standing. .......................................... 5

                1.      Zanotti and Brooks Make No Allegations of Fact Against Moving
                        Defendants and Do Not Allege an Injury Traceable to Their Conduct. ......5

                2.      Zanotti and Brooks Cannot Rely on Allegations Against Other Defendants
                        to Manufacture Standing as Against Moving Defendants. .........................6

        B.      Plaintiff Porter's Claims Against Moving Defendants Are Not Ripe. .................. 7

II.     Zanotti and Brooks Fail to State Causes of Action Against the Moving Defendants......... 8

        A.      Zanotti and Brooks Fail to State Claims Against the Moving Defendants Under
                General Business Law §§ 349, 350 and 350-a Under Counts I and II................... 8

        B.      Zanotti and Brooks Fail to State Claims Against the Moving Defendants for Fraud
                Under Count III........................................................................................................ 9

        C.      Zanotti and Brooks Fail to State Claims Against the Moving Defendants for
                Negligent Misrepresentation Under Count IV...................................................... 11

        D.      Zanotti and Brooks Fail to State Claims Against the Moving Defendants for
                Breach of Contract Under Count V. ..................................................................... 11

        E.      Zanotti and Brooks Fail to State Claims Against the Moving Defendants for
                Breach of Duty of Good Faith and Fair Dealing Under Count VI........................ 12

        F.      Zanotti and Brooks Fail to State Claims Against the Moving Defendants for
                Unjust Enrichment Under Count VII..................................................................... 12

        G.      Zanotti and Brooks Fail to State Claims Against Moving Defendant Intromark
                Incorporated for Breach of Fiduciary Duty Under Count VIII............................. 12

        H.      Zanotti and Brooks Fail to State Claims Against Moving Defendants for
                Violations of the American Inventors Protection Act Under Count IX................ 13

        I.      Zanotti and Brooks Fail to State Claims Against Moving Defendants for Violation
                of the Telephone Consumer Protection Act Under Count X. ............................... 14

        J.      Zanotti and Brooks Fail to State Any Claims Against Moving Defendant Robert
                Susa........................................................................................................................ 14

III.    Plaintiff Porter Fails to State Causes of Action Against the Moving Defendants. ........... 15

        A.      Porter Fails to State Claims Against the Moving Defendants Under General
                Business Law §§ 349, 350 and 350-a Under Counts I and II. .............................. 15

B.     Porter Fails to State Claims Against the Moving Defendants for Fraud (Count III) and Negligent Misrepresentation (Count IV). ........................................................ 17

    1.    Porter's Fraud Claim is Barred by the Gist of the Action Doctrine. ......... 17

    2.    Porter's Negligent Misrepresentation Claim (Count IV) is Barred by the Gist of the Action Doctrine. ..................................................................... 19

    3.    The Relevant Integration Clauses Bar Porter's Fraud and Misrepresentation Claims. ........................................................................ 20

    4.    Porter's Fraud and Misrepresentation Claims Fail for Lack of Justifiable Reliance. .................................................................................................. 20

C.     Porter Fails to State Claims Against the Moving Defendants for Breach of Contract Under Count V. .................................................................................... 22

D.     Porter Fails to State Claims Against the Moving Defendants for Breach of the Duty of Good Faith and Fair Dealing Under Count VI. ..................................... 23

E.     Porter Fails to State Claims Against the Moving Defendants for Unjust Enrichment Under Count VII. ............................................................................. 24

F.     Porter Fails to State Claims Against Moving Defendant Intromark, Incorporated for Breach of Fiduciary Duty Under Count VIII. ................................................ 24

G.     Porter Fails to State Claims Against Moving Defendants for Violations of the American Inventors Protection Act of 1999 Under Count IX. ............................. 26

H.     Porter Fails to State Claims Against Moving Defendants for Violations of the Telephone Consumer Protection Act Under Count X. ......................................... 27

I.     Porter Fails to State Any Claims Against Moving Defendant Robert Susa. ........ 29

IV.    If the Court Is Not Inclined To Dismiss Some Or All Of Plaintiffs' Claims, Then This Action Should Be Transferred To The United States District Court For The Western District Of Pennsylvania. ...................................................................................... 30

A.     Standard of Review on a Motion to Transfer Venue. .......................................... 30

B.     This Action Could Have First Been Brought in the Western District of Pennsylvania. ...................................................................................................... 32

C.     The Interests of Justice, and the Convenience of Parties and Witnesses Favor Transfer to the Western District of Pennsylvania. ............................................... 32

    1.    The Interests of Justice Weigh in Favor of Transfer to the Western District of Pennsylvania. ........................................................................................ 33

    2.    Transfer to the Western District of Pennsylvania is Convenient to the Parties, and Plaintiffs' Choice of Forum is Not Entitled to Deference. ...... 36

    3.    The Location of Relevant Documents and Relative Ease of Access to Sources of Proof Weighs in Favor of Transfer. ......................................... 37

    4.    The Locus of the Operative Facts Weighs in Favor of Transfer. .............. 38

5.    The Comparative Familiarity of Each District with Governing Law
      Weighs in Favor of Transfer. ...................................................................39

CONCLUSION ................................................................................................................ 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AEC One Stop Group, Inc. v. CD Listening Bar, Inc.*,
   326 F. Supp. 2d 525 (S.D.N.Y. 2004)........................................................................35

*Alexander Mill Servs., LLC v. Bearing Distribs., Inc.*,
   2007 WL 2907174 (W.D. Pa. Sept. 28, 2007).........................................................19

*Aluminium Bahrain B.S.C. v. Dahdaleh*,
   17 F. Supp. 3d 461 (W.D. Pa. 2014).........................................................................28

*Angermeir v. Cohen*,
   14 F. Supp. 3d 134 (S.D.N.Y. 2014).........................................................................10

*Anschutz Corp. v. Merrill Lynch & Co.*,
   690 F.3d 98 (2d Cir. 2012).........................................................................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................................................3, 28

*Banco de Seguros del Estado v. Employers Ins. of Wausau*,
   171 F. Supp. 2d 330 (S.D.N.Y. 2001).......................................................................31

*Beauchamp v. Trammell Crow Co.*,
   2006 WL 2645157 (E.D. Pa. Sept. 14, 2006) ..........................................................19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................3, 28

*Benevento v. Life USA Holding, Inc.*,
   61 F. Supp. 2d 407 (E.D. Pa. 1999) .........................................................................20

*Bennett v. Itochu Int'l, Inc.*,
   2012 WL 3627404 (E.D. Pa. Aug. 23, 2012), *aff'd*, 572 F. App'x 80 (3d Cir.
   2014) ....................................................................................................................21, 22

*Bishop v. GNC Franchising LLC*,
   403 F. Supp. 2d 411 (W.D. Pa. 2005)................................................................19, 22

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*,
   373 F.3d 296 (2d Cir. 2004)................................................................................12, 36

*Brown & Brown, Inc. v. Cola*,
   745 F. Supp. 2d 588 (E.D. Pa. 2010) .......................................................................26

*Bruno v. Erie Ins. Co.*,
    106 A.3d 48 (Pa. 2014) ........................................................................18

*Buonasera v. Honest Co., Inc.*,
    208 F. Supp. 3d 555 (S.D.N.Y. 2016).................................................4

*Burgess v. Wantz*,
    2013 WL 3245334 (N.D. Ohio June 26, 2013)................................13

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997).............................................................3

*Catalano v. Twp. of Upper Freehold*,
    2013 WL 5863742 (D.N.J. Oct. 30, 2013)........................................27

*Cessna v. Rea Energy Cooperative, Inc.*,
    2018 WL 4961176 (3d Cir. Oct. 15, 2018)........................................23

*Cheong v. Okayama Enterprises, Inc.*,
    2000 WL 1404379 (S.D.N.Y. Sept. 25, 2000)..................................32

*Chiste v. Hotels.com L.P.*,
    756 F. Supp. 2d 382 (S.D.N.Y. 2010)...............................................38

*In re Collins & Aikman Corp. Securities Litigation*,
    438 F. Supp. 2d 392 (S.D.N.Y. 2006)..........................................33, 37

*Crown Coal & Coke Co. v. Powhatan Mid-Val Coal Sales, L.L.C.*,
    929 F. Supp. 2d 460 (W.D. Pa. 2013)...............................................18

*In re DDAVP Direct Purchaser Antritrust Litig.*,
    585 F.3d 677 (2d Cir. 2009)................................................................9

*DeAngelis v. Corzine*,
    17 F. Supp. 3d 270 (S.D.N.Y. 2014).............................................9, 10

*DePuy Synthes Sales, Inc. v. Globus Medical, Inc.*,
    259 F. Supp. 3d 225 (E.D. Pa. 2017)................................................25

*Doug Grant, Inc. v. Great Bay Casino Corp.*,
    232 F.3d 173 (3d Cir. 2000)................................................................3

*eToll, Inc. v. Elias/Savion Advert., Inc.*,
    811 A.2d 10 (Pa. Super. Ct. 2002)..............................................18, 25

*Fisk v. Letterman*,
    424 F. Supp. 2d 670 (S.D.N.Y. 2006)................................................6

*Freeplay Music, LLC v. Gibson Brands, Inc.*,
   195 F. Supp. 3d 613 (S.D.N.Y. 2016) ....................................................................32

*Galdieri v. Monsanto Co.*,
   245 F. Supp. 2d 636 (E.D. Pa. 2002) ....................................................................19

*In re Initial Public Offering Secs. Litig.*,
   341 F. Supp. 2d 328 (S.D.N.Y. 2004) .....................................................................6

*Jem Accessories, Inc. v. D&H Distributing Co.*,
   2018 WL 3584790 (M.D. Pa. July 26, 2018) .........................................................24

*Jones v. Walgreen Co.*,
   463 F. Supp. 2d 267 (D. Conn. 2006) ..............................................................37, 38

*Khawaja v. RE/MAX Cent.*,
   151 A.3d 626 (Pa. Super. Ct. 2016) ......................................................................24

*Koch v. Greenberg*,
   14 F. Supp. 3d 247 (S.D.N.Y. 2014) ..................................................................9, 15

*Kolko v. Holiday Inns, Inc.*,
   672 F. Supp. 713 (S.D.N.Y. 1987) ........................................................................29

*Kommer v. Bayer Consumer Health*,
   252 F. Supp. 3d 304 (S.D.N.Y. 2017) .....................................................................9

*Kortright Capital Partners LP v. Investcorp Investment Advisers Limited*,
   257 F. Supp. 3d 348 (S.D.N.Y. 2017) ...................................................................11

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
   323 F.R.D. 145 (S.D.N.Y. 2017) .........................................................................4, 5

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .................................................................................................5

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*,
   244 F.R.D. 204 (S.D.N.Y. 2007) ...........................................................................10

*McGovern v. Jack D's, Inc.*,
   2004 WL 228667 (E.D. Pa. Feb. 3, 2004) .............................................................29

*Meisel v. Grunberg*,
   651 F. Supp. 2d 98 (S.D.N.Y. 2009) ................................................................12, 13

*Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Investments*,
   951 F.2d 1399 (3d Cir. 1991) ...........................................................................21, 22

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*,
 643 F Supp 2d 446 (S.D.N.Y. 2009).....................................................................7, 8

*Mills v. Polar Molecular Corp.*,
 12 F.3d 1170 (2d Cir. 1993)......................................................................................14

*Montinola v. Synchrony Bank*,
 2018 WL 4110940 (D.N.J. Aug. 28, 2018) .............................................................27

*Naughright v. Weiss*,
 826 F. Supp. 2d 676 (S.D.N.Y. 2011).......................................................................11

*In re Nematron Corp. Securities Litigation*,
 30 F. Supp. 2d 397 (S.D.N.Y. 1998).........................................................................37

*New York University v. Factory Mutual Insurance Co.*,
 2018 WL 1737745 (S.D.N.Y. March 27, 2018) .........................................................9

*Ostrer v. Aronwald*,
 567 F.2d 551 (2d Cir. 1977)........................................................................................6

*Pace v. Quintanilla*,
 2013 WL 5405563 (S.D.N.Y. Sept. 23, 2013)..........................................................30

*Pence v. Gee Group, Inc.*,
 236 F. Supp. 3d 843 (S.D.N.Y. 2017).................................................................34, 38

*Postie v. Frederick*,
 2015 WL 7428616 (M.D. Pa. Nov. 23, 2015) ...........................................................27

*Potter v. Retail Automation Products, Inc.*,
 2014 WL 494521 (S.D.N.Y. Feb. 5, 2014)................................................................10

*Ramos v. Patrician Equities Corp.*,
 765 F. Supp. 1196 (S.D.N.Y. 1991)............................................................................6

*Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank*
 *of New York Mellon*,
 775 F.3d 154 (2d Cir. 2014)....................................................................................4, 6

*Richardson v. Verde Energy USA, Inc.*,
 2016 WL 7380708 (E.D. Pa. Dec. 19, 2016) ............................................................27

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
 441 F. Supp. 2d 579 (S.D.N.Y. 2006)..........................................................................5

*Simon v. E. Kentucky Welfare Rights Org.*,
 426 U.S. 26 (1976).......................................................................................................4

*Smart Skins LLC v. Microsoft Corp.*,
   2015 WL 1499843 (S.D.N.Y. Mar. 27, 2015) ...................................................................30

*Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*,
   40 F. Supp. 2d 644 (W.D. Pa. 1999)...................................................................................20

*Takeda Pharm. USA, Inc. v. Spireas*,
   2017 WL 4401988 (E.D. Pa. Oct. 3, 2017)..........................................................................26

*Trisvan v. Heyman*,
   305 F. Supp. 3d 381 (E.D.N.Y. 2018) .................................................................................14

*Trumper v. GE Capital Retail Bank*,
   79 F. Supp. 3d 511 (D.N.J. 2014) .................................................................................27, 28

*Mastr Asset Backed Sec. Tr. 2007-WMC1, ex rel. U.S. Bank Nat. Ass'n v. WMC*
   *Mortg. LLC*,
   880 F. Supp. 2d 418 (S.D.N.Y. 2012)................................................................................33

*U.S. Small Bus. Admin. v. Progress Bank*,
   2004 WL 2980412 (E.D. Pa. Dec. 22, 2004)................................................................23, 24

*Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc.*,
   28 F. Supp. 2d 947 (E.D. Pa. 1998) ...................................................................................25

*Vantage Learning (USA), LLC v. Edgenuity*,
   246 F. Supp. 3d 1097 (E.D. Pa. 2017) ...............................................................................24

*Wald v. Bank of America Corp.*,
   856 F. Supp. 2d 545 (E.D.N.Y. 2012) ................................................................................33

*Walsh v. Alarm Sec. Grp., Inc.*,
   95 F. App'x 399 (3d Cir. 2004) .........................................................................................29

*Warrick v. Gen. Elec. Co.*,
   70 F.3d 736 (2d Cir. 1995)................................................................................................36

*Washington v. Kellwood Co.*,
   2009 WL 855652 (S.D.N.Y. March 24, 2009) ...................................................................12

*Weisblum v. Prophase Labs, Inc.*,
   88 F. Supp. 3d 283 (S.D.N.Y. 2015)...............................................................................8, 15

*Wicks v. Milzoco Builders, Inc.*,
   470 A.2d 86 (Pa. 1983) .....................................................................................................29

*Wicks v. Milzoco Builders, Inc.*,
   503 Pa. 614 (Pa. 1983) .....................................................................................................29

*Wilkes v. State Farm Ins. Companies*,
    2005 WL 1667396 (M.D. Pa. July 15, 2005)..................................................22

*Winter v. Am. Institute of Medical Sciences & Ed.*,
    242 F. Supp. 3d 206 (S.D.N.Y. 2017)................................................30, 31

*Wyndham Assocs. v. Bintliff*,
    398 F.2d 614 (2d Cir. 1968)....................................................................33

*Yenchi v. Ameriprise Fin., Inc.*,
    161 A.3d 811 (Pa. 2017).........................................................................24

*Zim American Integrated Shipping Services Co., LLC v. Aegis Trading &
    Shipping Co.*,
    2014 WL 5286102 (S.D.N.Y. July 23, 2014) .......................................11

## Statutes

35 U.S.C.A. § 297...............................................................................13, 26

28 U.S.C. § 1391...............................................................................30, 31

28 U.S.C. § 1404.................................................................29, 30, 31, 39

47 U.S.C. § 227...............................................................................14, 28

General Business Law §§ 349 and 350..........................................8, 9, 15,16

Telephone Consumer Protection Act ...........................................13, 14, 27

## Other Authorities

Federal Rules of Civil Procedure ...................................................... *passim*

U.S. Const. art. III, § 2.................................................................................4

## INTRODUCTION

Plaintiffs' putative Amended Class Action Complaint (hereinafter referred to as the "Amended Complaint") is an inadequate and conclusory pleading replete with irresponsible allegations against the Moving Defendants.[1] Each Plaintiff fails to satisfy Article III standing requirements, and each Plaintiff also fails to state any cause of action against Moving Defendants. Thus, the Amended Complaint is ripe for dismissal. In the alternative, this action should be transferred to the United States District Court for the Western District of Pennsylvania.

Throughout the Amended Complaint, Plaintiffs allege that Moving Defendants are engaged in a "multi-tiered conspiracy" with other named defendants that are distinct and unrelated entities, such as defendant Invents Company. (Amended Complaint ("Am. Compl.") at ¶¶ 7, 9.) Yet, as Plaintiffs admitted in open Court on December 19, 2018, Plaintiffs lack "real evidence that these two entities are related." *See* Transcript of Court Conference, dated December 19, 2018, attached as Exhibit 5 to the Declaration of Daniel A. Schnapp ("Schnapp Dec.") at 11:14-18.

Despite Plaintiffs allegedly having "expended hundreds of hours ascertaining, researching and investigating the allegations," (Am. Compl. at ¶ 243), Plaintiffs fail to allege any plausible basis on which to treat Moving Defendants and other defendants as one and the same.

## SUMMARY OF ARGUMENT

First, Plaintiffs Zanotti and Brooks have absolutely no relationship with any of the Moving Defendants. Rather, their allegations relate to other defendants in this action that, as

---

[1] As used herein, "Moving Defendants" collectively refers to Defendants Invention Submission Corporation d/b/a InventHelp ("InventHelp"), Technosystems Consolidated Corp., Technosystems Service Corp., Western Invention Submission Corp., Universal Payment Corp., Intromark Inc. and Robert J. Susa. These entities are distinct and unrelated to other named defendants such as "Invents Company" and "Invents Company, LLC."

Plaintiffs admit, are unrelated to Moving Defendants. Therefore, these Plaintiffs lack Article III standing to assert claims against Moving Defendants.

The third named plaintiff, Sherry Porter, was actively engaged in business with certain of the Moving Defendants up until this action was instituted. Indeed, Moving Defendant Intromark Incorporated arranged for a payment to Porter from an interested third party less than a month before this action was first instituted. Therefore, Porter's claims against Moving Defendants are premature and not ripe.

Critically, all of the Plaintiffs similarly fail to state causes of action against the Moving Defendants. Plaintiffs Zanotti and Porter fail to make any substantive allegations of fact against Moving Defendants. Plaintiff Porter's claims are also either unsupported by adequate facts and not recognizable as a matter of law, or due to Porter's written agreements with certain Moving Defendants, foreclosed under Pennsylvania's "gist of the action" doctrine.

In the event that this Court is not inclined to dismiss some or all of Plaintiffs' claims against Moving Defendants, then this Court should transfer this action to the United States District Court for the Western District of Pennsylvania. Transfer of venue will support the convenience of the majority of parties and critical witnesses, and it will be more efficient to try and defend this action in the same venue where a parallel class action is already pending against the Moving Defendants, and being prosecuted by the same lawyers.

## FACTUAL BACKGROUND

Moving Defendants respectfully refer the Court to the Declaration of Daniel A. Schnapp. for a summary of the relevant factual background.

## MOTION TO DISMISS STANDARD[2]

To survive a motion to dismiss under FRCP 12(b)(6), a complaint must include sufficient facts to state a claim to relief that is "plausible" on its face. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a 12(b)(6) motion, a court should assume the factual allegations as true, but should not assume the truth of legal conclusions. *Id.* at 679. A party pleading a claim must provide the grounds for his entitlement to relief, not just "labels and conclusions, and a formulaic recitation [of a claim's elements]," *Twombly*, 550 U.S. at 545, or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp v. Twombly*, 550 U.S. at 555 (quotations and citations omitted). In reviewing a motion to dismiss, the Court need not accept as true "unsupported conclusions and unwarranted inferences." *See Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000). Furthermore, the Court "need not credit a complaint's bald assertions or legal conclusions." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997) (citations omitted).

---

[2] Porter's contracts with Moving Defendants have a choice of law provision indicating that they will be governed by and interpreted according to the laws of the Commonwealth of Pennsylvania. Therefore, Moving Defendants will set forth the motion to dismiss standard with both Second Circuit and Third Circuit precedent.

## ARGUMENT

**I.     The Plaintiffs' Claims Do Not Satisfy Article III of the United States Constitution.**

None of the named Plaintiffs satisfy the constitutional limits derived from Article III of the United States Constitution. Plaintiffs Zanotti and Brooks have no standing because they fail to allege any dealings or business relationship with Moving Defendants, and Plaintiff Porter's claims are, at best, premature, as she was in the midst of an ongoing business relationship with certain Moving Defendants up until this action was first instituted.

Under Article III of the United States Constitution, a federal court's jurisdiction is limited to "cases" and "controversies." U.S. Const. art. III, § 2. "One component of this case-or-controversy requirement is the doctrine of standing, which requires every federal plaintiff to establish, for each claim he seeks to press . . . a personal injury that is fairly traceable to the defendant's conduct and likely to be redressed by the requested relief[.]" *Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 159 (2d Cir. 2014) (internal quotations and citations omitted).

The filing of a putative class action does not relax standing requirements. *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016) ("That a suit may be a class action, however, adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class.") (quoting *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)).

In order "to establish the first requirement—injury in fact—a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 154 (S.D.N.Y. 2017) (internal quotations omitted). Importantly, standing

4

requirements are not "'mere pleading requirements but rather an indispensable part of the plaintiff's case,' [and] a plaintiff must support them 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Id.* at 154 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

      **A.**      **Plaintiffs Zanotti and Brooks Do Not Have Standing.**

          **1.**      **Zanotti and Brooks Make No Allegations of Fact Against Moving Defendants and Do Not Allege an Injury Traceable to Their Conduct.**

In the Amended Complaint, Plaintiffs loosely identify two proposed subclasses of individuals. (Am. Compl. at ¶ 235.) These proposed subclasses are: "(1) All persons and entities in the United States who purchased goods and/or services from the InventHelp Defendants . . . and (2) All persons and entities in the United States who purchased goods and/or services from the Invents Company Defendants." (Am. Compl. at ¶ 235.)

Here, Plaintiffs Zanotti and Brooks make one bare and minimal factual allegation with regard to only one of the Moving Defendants: that they contacted Moving Defendant InventHelp by telephone to discuss a purported invention idea, and that they were then contacted by a distinct and unrelated entity, defendant Invents Company. (Am. Compl. at ¶¶ 58, 62, 104, 108.) Other than these allegations, Plaintiffs Zanotti and Brooks make no allegations of fact against Moving Defendant InventHelp. They do not allege that they ever transacted **<u>any</u>** business with any of the Moving Defendants, and fail to assert **<u>any</u>** allegations of fact whatsoever against Moving Defendants Technosystems Consolidated Corporation, Technosystems Service Corporation, Western Invention Submission Corporation, Universal Payment Corporation, Intromark Incorporated or Robert J. Susa.

It is settled under this Court's precedent that standing is lacking in situations where a named plaintiff lacks the requisite relationship with a defendant. *See In re Salomon Smith Barney*

*Mut. Fund Fees Litig.,* 441 F. Supp. 2d 579, 607 (S.D.N.Y. 2006); *In re Initial Public Offering Secs. Litig.,* 341 F. Supp. 2d 328, 345-47 (S.D.N.Y. 2004).

Zanotti and Brooks have failed to allege "a personal injury that is fairly traceable" to any of the Moving Defendants' conduct. *Bank of New York Mellon*, 775 F.3d at 159.

### 2.    Zanotti and Brooks Cannot Rely on Allegations Against Other Defendants to Manufacture Standing as Against Moving Defendants.

Aside from Zanotti's and Porter's single allegations concerning a phone call made to InventHelp, the remainder of the allegations improperly lump in the Moving Defendants with various unaffiliated companies and individuals. Plaintiffs Zanotti and Brooks cannot and have not alleged any actual identity of ownership or alleged any other information that would allow this Court to believe that all of the Defendants are in any way affiliated, which they absolutely are not. Therefore, to the extent Plaintiffs Zanotti and Brooks attempt to bootstrap standing by relying on the baseless and irresponsible allegations that Moving Defendants are engaged in a conspiracy with other defendants, such attempts should be rejected.

First, mere conclusory allegations of a conspiracy are facially insufficient and should be dismissed outright. *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir. 1977) ("This court has repeatedly held that complaints containing only 'conclusory,' 'vague' or 'general allegations' of a conspiracy . . . will be dismissed."); *Fisk v. Letterman,* 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006) (rejecting conspiracy allegation where plaintiff "offered no more than conclusory assertions of [defendant's] involvement in the purported conspiracy").

Zanotti and Brooks cannot manufacture standing by relying on conclusory allegations of a supposed grand scheme or joint fraud. *See Ramos v. Patrician Equities Corp.*, 765 F. Supp. 1196, 1199–200 (S.D.N.Y. 1991) ("Plaintiffs seek to avoid the effect of the standing requirement by arguing that all the defendants were in a conspiracy. The idea apparently is that

the conspiracy—and hence all the conspirators—affected all the partnerships, and therefore an

investor in a single partnership can sue all the conspirators . . . The allegations in the complaint

do not even approach what is required. The conspiracy theory does not create standing.")

Indeed, at the December 19, 2018 conference before this Court, Plaintiffs' Counsel

admitted that they have no evidence that Moving Defendants are related to Invents Company and

other defendants. *See* Exhibit 5 to the Schnapp Dec. at 11:14-18 ("If we are convinced that

Invents [Company] and InventHelp - - we don't have real evidence that these two entities are

related, then we would be amenable to proceeding in New York only as to Invents [Company.]")

### B.    Plaintiff Porter's Claims Against Moving Defendants Are Not Ripe.[3]

Plaintiff Porter's claims are not ripe for adjudication by this Court. "The ripeness doctrine

is drawn both from Article III limitations on judicial power and from prudential reasons for

refusing to exercise jurisdiction . . . [and] prevents a federal court from entangling itself in

abstract disagreements over matters that are premature for review because the injury is merely

speculative and may never occur." *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab.*

*Litig.*, 643 F Supp 2d 446, 454 (S.D.N.Y. 2009) (internal quotations omitted). If a court holds

that a case is not ripe, "it means that the case will be better decided later and that the parties will

not have constitutional rights undermined by the delay." *Id.*

Plaintiff Porter admits in the Amended Complaint that she was in the midst of an ongoing

business relationship with certain Moving Defendants through the time that the action was first

filed. (Am. Compl. at ¶¶ 190-217.) In fact, Moving Defendant Intromark Incorporated arranged

for a payment to Plaintiff Porter less than a month before this action was first filed in the

---

[3] While difficult to parse out Plaintiff Porter's claims with respect to her contracts with certain Moving Defendants, Moving Defendants expressly reserve all defenses afforded to them by virtue of any applicable statutes of limitations.

Westchester County Supreme Court for the State of New York. (Am. Compl. at ¶ 217). Plaintiff Porter cannot reasonably allege that she has suffered any fraud at the hands of Moving Defendants – or that they have breached any contract – when she was actively in the process of receiving a financial benefit from her affiliation with certain of the Moving Defendants.

This is precisely the kind of situation that federal courts should avoid adjudicating because it is an "abstract disagreement[ ] over matters that are premature for review because the injury is merely speculative and may never occur." *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 643 F Supp 2d at 454. Therefore, Plaintiff Porter's claims are not ripe for adjudication and do not satisfy Article III standing requirements.

## II.    Zanotti and Brooks Fail to State Causes of Action Against the Moving Defendants.

Plaintiffs Zanotti and Brooks have also failed to sufficiently state any cause of action against the Moving Defendants. The "Counts" in the Amended Complaint comprise thirteen pages of boilerplate allegations where all of the defendants' purported conduct is addressed collectively. Even a cursory reading of the entire Amended Complaint, including the section titled "Factual Basis for Claims," demonstrates that Moving Defendants are improper defendants to every claim alleged by Plaintiffs Zanotti and Brooks.

### A.    Zanotti and Brooks Fail to State Claims Against the Moving Defendants Under General Business Law §§ 349, 350 and 350-a Under Counts I and II.

In order to state a cause of action under General Business Law § 349, "a plaintiff must allege that the defendant (1) engaged in consumer-oriented conduct; (2) that the conduct was materially misleading; and (3) that the plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015). General Business Law § 350 "prohibits false advertising and has the same elements as § 349, except for the requirement that the Defendant's *advertisement* "(1) had an impact on

consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury." *Koch v. Greenberg*, 14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014).

Zanotti and Brooks fail to specifically allege any materially misleading conduct by the Moving Defendants. As Plaintiffs Zanotti and Brooks fail to allege any materially misleading conduct by any of the Moving Defendants leading to their alleged injury, their claims fail. *New York University v. Factory Mutual Insurance Co.*, 2018 WL 1737745, at *15 (S.D.N.Y. March 27, 2018) (dismissing General Business Law § 349 claim where plaintiff "has not alleged a deceptive act that is materially misleading."); *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 313 (S.D.N.Y. 2017) (same).

## B.   Zanotti and Brooks Fail to State Claims Against the Moving Defendants for Fraud Under Count III.

In order to state a claim for fraud, a plaintiff must allege "(1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with scienter or an intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) such reliance caused damage to the plaintiff." *DeAngelis v. Corzine*, 17 F. Supp. 3d 270, 280 (S.D.N.Y. 2014). Under Rule 9(b) of the Federal Rules of Civil Procedure, "a plaintiff alleging fraud must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* at 281 (internal quotations omitted). The facts, as alleged, must "give rise to a *strong* inference of fraudulent intent." *Id.* (emphasis in original). Critically, "in a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant." *Id.* at 281-82 (quoting *In re DDAVP Direct Purchaser Antritrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009)).

Plaintiffs Zanotti and Brooks have failed to plead that *any* of the Moving Defendants made *any* knowing or intentional material misrepresentations or omissions of fact leading to their

reliance or damages. Plaintiffs Zanotti and Brooks only allege in their Amended Complaint that they engaged in one single, non-substantive phone conversation with InventHelp. (Am. Compl. at ¶¶ 58, 104.) They do not allege that any knowing or intentional misrepresentations were made on this call.

These allegations are wholly insufficient for Zanotti and Brooks to maintain a claim for fraud against the Moving Defendants. *See Corzine*, 17 F. Supp. 3d at 282 (dismissing fraud claim where the complaint did not permit a reasonable inference that certain defendants made statements with the intent to defraud plaintiff); *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204 (S.D.N.Y. 2007) (dismissing claim for fraud where allegations failed to identify who made alleged representations).

To the extent Plaintiffs Zanotti and Brooks seek to attribute acts or statements made by unrelated individual and entity defendants, such attempts must fail. *See Potter v. Retail Automation Products, Inc.*, 2014 WL 494521, at *2 (S.D.N.Y. Feb. 5, 2014) ("Where allegations of fraud involve multiple defendants, the complaint must set forth allegations specifically attributable to each individual defendant."); *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 147 (S.D.N.Y. 2014) ("[A] bare allegation of an individual defendant's affiliation with entities allegedly committing fraudulent acts is not enough to satisfy Rule 9(b).")

Plaintiffs Zanotti and Brooks (1) fail to allege with specificity any knowing or intentional material representations made to them by the Moving Defendants, (2) fail to allege with specificity how they justifiably relied on any statements made *by the Moving Defendants*, and (3) fail to allege with specificity how any justifiable reliance on statements made by the Moving Defendants led to their alleged injuries.

**C.      Zanotti and Brooks Fail to State Claims Against the Moving Defendants for Negligent Misrepresentation Under Count IV.**

To state a claim for negligent misrepresentation, a plaintiff must allege that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Kortright Capital Partners LP v. Investcorp Investment Advisers Limited*, 257 F. Supp. 3d 348, 355 (S.D.N.Y. 2017) (quoting *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012).

Zanotti and Brooks have thoroughly failed to allege any semblance of a relationship with the Moving Defendants, let alone a "special relationship." Plaintiffs Zanotti and Brooks fail to identify any false representations they received from the Moving Defendants that they subsequently relied on. Without such allegations, a claim for negligent misrepresentation cannot stand. *See Naughright v. Weiss*, 826 F. Supp. 2d 676, 688 (S.D.N.Y. 2011) ("To allege a special relationship, [Plaintiff] must establish something beyond an ordinary arm's length transaction[.]") (internal quotations omitted).

**D.      Zanotti and Brooks Fail to State Claims Against the Moving Defendants for Breach of Contract Under Count V.**

To state a claim for breach of contract, a plaintiff must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Zim American Integrated Shipping Services Co., LLC v. Aegis Trading & Shipping Co.*, 2014 WL 5286102, at *1 (S.D.N.Y. July 23, 2014). Tellingly, Plaintiffs Zanotti and Brooks have failed to plead that they entered into **any** contracts with **any** of the Moving Defendants. They only make allegations regarding contracts with Innovation Credit

Corporation, Invents Company, LLC, Zambro Manufacturing, Inc., and other unrelated defendants.

### E.    Zanotti and Brooks Fail to State Claims Against the Moving Defendants for Breach of Duty of Good Faith and Fair Dealing Under Count VI.

To state a claim for breach of the duty of good faith and fair dealing, a plaintiff must allege that (1) defendant owes plaintiff a duty to act in good faith and conduct fair dealing; (2) defendant breached that duty; and (3) the breach of that duty proximately caused plaintiff's damages. *Washington v. Kellwood Co.*, 2009 WL 855652, at *6 (S.D.N.Y. March 24, 2009). Zanotti and Brooks have failed to identify any relationship with the Moving Defendants, and therefore have not plead that any of the Moving Defendants owed or breached any purported duty to them.

### F.    Zanotti and Brooks Fail to State Claims Against the Moving Defendants for Unjust Enrichment Under Count VII.

To state a claim for unjust enrichment, a plaintiff must allege that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). Here, Zanotti and Brooks fail to allege that the Moving Defendants received any money or benefit at their expense. Rather, they only allege that they made payments to other specific defendants. There are no allegations from which to infer that the Moving Defendants were enriched by Zanotti or Brooks in any way.

### G.    Zanotti and Brooks Fail to State Claims Against Moving Defendant Intromark Incorporated for Breach of Fiduciary Duty Under Count VIII.

To state a claim for breach of fiduciary duty, a plaintiff must allege "(1) that a fiduciary duty existed between plaintiff and defendant, (2) that defendant breached that duty, and (3) damages as a result of the breach." *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 114

(S.D.N.Y. 2009). Parties dealing at arm's length in a commercial transaction "lack the requisite level of trust or confidence between them necessary to give rise to a fiduciary obligation." *Id.*

Zanotti and Brooks fail to even allege any relationship between them and Moving Defendant Intromark, so it is impossible for them to claim that Intromark owed them a fiduciary duty. Even assuming that Zanotti and Brooks entered into contracts with Intromark Incorporated (Am. Compl. at ¶ 319), which they did not, this would not give rise to a fiduciary duty and the claims would still fail. *Grunberg*, 651 F. Supp. 2d at 114 ("Generally, commercial transactions do not create fiduciary obligations, absent express language in the contract, or a prolonged prior course of dealings between the parties establishing the fiduciary relationship.").

### H.   Zanotti and Brooks Fail to State Claims Against Moving Defendants for Violations of the American Inventors Protection Act Under Count IX.

In order to maintain a claim under the American Inventors Protection Act, a plaintiff must be a "customer who enters into a contract with an invention promoter and who is found by a court to have been injured by any material false or fraudulent statement or representation, or any omission of material fact, by that invention promoter . . . or by the failure of that invention promoter to disclose such information as required under subsection (a)." 35 U.S.C.A. § 297(b)(1). As already set forth herein, Zanotti and Brooks do not allege that they contracted with any of the Moving Defendants. Rather, they allegedly contracted with Invents Company and other defendants that are distinct and unrelated entities and individuals. *Burgess v. Wantz*, 2013 WL 3245334, at *4 (N.D. Ohio June 26, 2013) ("Plaintiff did not enter into a contract with Kessler. Without a contract, Plaintiff cannot bring a civil action under Section 297 for alleged injury due to failure to disclose information.")

I.      **Zanotti and Brooks Fail to State Claims Against Moving Defendants for Violation of the Telephone Consumer Protection Act Under Count X.**

A plaintiff can only maintain a private right of action under the Telephone Consumer Protection Act where they have "received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring [an action] in an appropriate court of that State." 47 U.S.C. § 227. Plaintiffs Zanotti and Brooks have failed to allege that any of the Moving Defendants made any phone calls to them. In fact, each of them allege only one phone call with a single Moving Defendant, and Zanotti and Brooks were the ones who initiated it. (Am. Compl. at ¶¶ 58, 104.)

J.      **Zanotti and Brooks Fail to State Any Claims Against Moving Defendant Robert Susa.**

As already set forth above, Zanotti and Brooks fail to state causes of action against any of the Moving Defendants. Their pleading is similarly deficient with regard to the claims advanced against Mr. Susa. Under New York law, "corporate officers may be subject to individual liability for (1) participat[ion] in the commission of a tort, or (2) where the corporation is the mere alter ego of the owner or executives." *Trisvan v. Heyman*, 305 F. Supp. 3d 381, 407 (E.D.N.Y. 2018).

The Amended Complaint is wholly lacking in this regard. All that Plaintiffs allege is that Mr. Susa is President of the other Moving Defendants. (Am. Compl. at ¶ 37.) Where Plaintiffs seek to solely rely on an individual's status as a corporate officer in a pleading, they have failed to state a claim. *Heyman*, 305 F. Supp. 3d at 407; *see also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1177 (2d Cir. 1993) ("A director is not personally liable for his corporation's contractual breaches unless he assumed personal liability, acted in bad faith or committed a tort

14

in connection with the performance of the contract.") Therefore, all of Zanotti's and Brooks'

claims, as asserted against Moving Defendant Robert Susa, should be dismissed.

**III.     Plaintiff Porter Fails to State Causes of Action Against the Moving Defendants.[4]**

**A.     Porter Fails to State Claims Against the Moving Defendants Under General Business Law §§ 349, 350 and 350-a Under Counts I and II.**

As already set forth above, in order to state a cause of action under General Business Law

§ 349, "a plaintiff must allege that the defendant (1) engaged in consumer-oriented conduct;

(2) that the conduct was materially misleading; and (3) that the plaintiff suffered injury as a

result of the allegedly deceptive act or practice." *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp.

3d 283, 292 (S.D.N.Y. 2015). General Business Law § 350 "prohibits false advertising and has

the same elements as § 349, except for the requirement that the Defendant's *advertisement* "(1)

had an impact on consumers at large, (2) was deceptive or misleading in a material way, and

(3) resulted in injury." *Koch v. Greenberg*, 14 F. Supp. 3d 247, 261 (S.D.N.Y. 2014).

Here, Plaintiff Porter has failed to allege any "materially misleading" statements or

advertising on the part of Moving Defendants. While the Amended Complaint alleges in a loose

and conclusory fashion that Moving Defendants' conduct and advertisements mislead consumers

with regard to a product's potential profitability, viability, and patentability, the opposite is true.

At every stage of Plaintiff Porter's business relationship with certain of the Moving Defendants,

it was repeatedly expressed (and explicitly acknowledged by Plaintiff Porter), that Moving

Defendants made no representations, guarantees, or promises regarding a proposed invention.

Upon executing the BIP Agreement, Plaintiff Porter acknowledged, by virtue of her own

signature, that:

---

[4] As set forth above, Plaintiff Porter's contracts with certain of the Moving Defendants contain a Pennsylvania choice of law provision. Therefore, each claim will be addressed under applicable Third Circuit and Pennsylvania precedent.

- "InventHelp cannot be aware of or responsible for the existence of similar concepts."

- "THE PURCHASE OF INVENTOR ASSISTANCE IS A HIGH-RISK EXPENDITURE."

- "We do not evaluate or appraise the merit or marketability of your idea or Invention. Therefore, if we or our sales consultants tell you, for example, that your idea is 'good,' is 'potentially marketable,' is 'commercially feasible' or that it is 'promotable,' such statements represent only the opinion of InventHelp, Western InventHelp or its sales consultants, and in no way imply that a competent and objective appraisal or evaluation of the merit or marketability of your idea or product has been conducted."

Exhibits 1 and 2 to Schnapp Dec.

Upon executing the Submission Agreement, Plaintiff Porter made a number of further

critical representations, belying the assertion that Moving Defendants violated New York's

General Business Law:

- "Client understands and agrees that InventHelp does not evaluate the invention's potential for licensing and expresses no opinion on the marketability of the idea, invention or product. Client acknowledges that InventHelp has made no claim, representation, and/or warranty that any of the services referred to in this Agreement will or are likely to result in any license and/or financial gain for Client. Client acknowledges that InventHelp has made Client aware that the majority of inventions are not licensed by third parties and are not financially successful[.]"

Exhibit 3 to Schnapp Dec.

Upon reviewing and executing the Intromark Proposal, Plaintiff Porter further agreed and

acknowledged that:

- **"NOTHING IN THIS AGREEMENT SHALL BE CONSTRUED AS A REPRESENTATION, INDUCEMENT, PROMISE OR GUARANTEE THAT INTROMARK WILL OBTAIN ANY RESULTS, SALES OR LICENSING AGREEMENTS FOR CLIENT, AS VERY FEW IDEAS ACHIEVE COMMERCIAL SUCCESS."**

Plaintiff Porter's conclusory allegations regarding the Moving Defendants' supposed

violations of General Business Law §§ 349 and 350 are belied by the very contracts that she so

heavily relies upon. Plaintiff Porter has failed to allege any materially misleading statements or

advertising by the Moving Defendants, and therefore Counts I and II of the Amended Complaint, as alleged by Plaintiff Porter against the Moving Defendants, should be dismissed.

### B.   Porter Fails to State Claims Against the Moving Defendants for Fraud (Count III) and Negligent Misrepresentation (Count IV).

#### 1.   Porter's Fraud Claim is Barred by the Gist of the Action Doctrine.

Plaintiff Porter's claims against the Moving Defendants all center upon alleged breaches of three contracts—the BIP Agreement, the Submission Agreement, and the Intromark Proposal. Throughout the Amended Complaint, Porter alleges dissatisfaction with certain Moving Defendants' performance under those contracts, and liberally quotes and relies upon them.

For instance, Plaintiff asserts that the materials she received in connection with the BIP Agreement were "nothing more than loosely-related cut and pasted information, and focused on dog-walking rather than pet safety." (Am. Compl. at ¶ 156). Porter also alleges that the data bank companies under the Submission Agreement were all shams. (Am. Compl. at ¶ 181).

These purported frauds are also the bedrock for Porter's breach of contract claim in Count V, which avers that "Defendants failed to fulfill the obligations set forth in the above-referenced contracts, thereby breaching their respective contracts with Plaintiffs [*sic*], and Plaintiffs [*sic*] have been damaged thereby." (Am. Compl. at ¶ 301).

Further, with respect to Intromark, Porter—without pleading any particulars—cites to the Intromark Proposal, stating, "Intromark has agreed to attempt to market inventions, ideas or products only where substantial interest has been expressed, or where in Intromark's sole discretion it wishes to undertake said marketing effort." (Am. Compl. at ¶ 186). While the basis of Porter's claim concerning the Intromark Proposal is unclear, she appears to assert that Intromark breached this agreement. Porter also erroneously goes on to conclude that the language of the Intromark Proposal creates a fiduciary relationship.

The scope of Pennsylvania's gist of the action doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims. As a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *eToll, Inc. v. Elias/Savion Advert., Inc.,* 811 A.2d 10, 14 (Pa. Super. Ct. 2002). The reasoning behind this separation of claims is supported by common sense, in that "[t]ort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals." *Id.* (quotations and citations omitted).

When examining application of the gist of the action doctrine, "the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, *e.g.*, for negligence, is not controlling." *Bruno v. Erie Ins. Co*., 106 A.3d 48, 63 (Pa. 2014). "If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract . . . then the claim is to be viewed as one for breach of contract." *Id.*

Such is the case with respect to the fraud claim alleged in Count III. Porter was purportedly dissatisfied with the services she received from certain of the Moving Defendants, claiming that "fraud permeates all of the dealings and contracts between Class Plaintiffs and all Defendants herein . . . [and] the agreements and contracts signed by Class Plaintiffs are part of a grand fraudulent scheme." (Am. Compl. at ¶¶ 272-273).

As courts in the Third Circuit have found, "[m]aking boiler plate allegations that a defendant's failure to live up to its contractual obligations proves that the statements concerning its ability to perform were false, fraudulent or misleading reflects nothing more than the epitome of a self-serving attempt to bootstrap a contract claim into one for fraud." *Crown Coal & Coke*

18

*Co. v. Powhatan Mid-Val Coal Sales, L.L.C.*, 929 F. Supp. 2d 460, 475 (W.D. Pa. 2013).

Because Count III sounds in contract, it must be dismissed under the gist of the action doctrine.

> **2.      Porter's Negligent Misrepresentation Claim (Count IV) is Barred by the Gist of the Action Doctrine.**

Similarly, Plaintiff Porter's negligent misrepresentation claim should be disposed of by the gist of the action doctrine. Pennsylvania courts have found that "[a]dding the words 'falsely' and 'negligently' to the representations made in the course of reaching an agreement does not convert what is essentially a breach of contract action into a fraud or negligence claim." *Bishop v. GNC Franchising LLC*, 403 F. Supp. 2d 411, 417 (W.D. Pa. 2005).

Just as with Porter's fraud claim, her negligent misrepresentation claim rests on alleged contractual obligations. (Am. Compl. at ¶ 294). In such instances, negligent misrepresentation claims are barred by the gist of the action doctrine. *See Alexander Mill Servs., LLC v. Bearing Distribs., Inc.,* 2007 WL 2907174 at *9 (W.D. Pa. Sept. 28, 2007) ("It is clear that the gist of the action doctrine bars plaintiff's claims for fraud and misrepresentation" when "Plaintiff essentially complains that defendants could not live up to standards set forth in the contract."*); Galdieri v. Monsanto Co.*, 245 F. Supp. 2d 636, 650 (E.D. Pa. 2002) (noting that a "breach of contract claim cannot be bootstrapped" into a tort claim).

Count IV is barred by the well-settled rule that any purported "misrepresentations" made by any of the Moving Defendants during the course of negotiating and executing the relevant contracts—*i.e.*, the BIP Agreement, the Submission Agreement, and the Intromark Proposal— cannot form the basis for any tort liability. *See Galdieri*, 245 F. Supp. 2d at 650–51; *Beauchamp v. Trammell Crow Co*., 2006 WL 2645157, at *3 (E.D. Pa. Sept. 14, 2006) (applying gist of the action doctrine when plaintiff's "misrepresentation claim is merely a breach of contract claim in disguise") (quotations and citations omitted).

19

3.     **The Relevant Integration Clauses Bar Porter's Fraud and Misrepresentation Claims.**

Both the Submission Agreement and the Intromark Proposal include integration clauses stating, **"This Agreement is the entire and only Agreement between the parties; and any verbal statements not specifically incorporated into this written Agreement are abandoned, void and of no force and effect."** (Exhibits 3 and 4 to Schnapp Dec.) (emphasis added). These integration clauses bar Porter's fraud and misrepresentation claims as a matter of law.

The thrust of Porter's claims in the Amended Complaint is that Moving Defendants use "a sham agreement to fraudulently lure Ms. Porter into spending more money for services that Defendants cannot, and do not intend to, provide." (Am. Compl. at ¶ 222), and that Defendants "falsely represent that their services will likely result in financial gain for consumers in order to induce Plaintiffs to sign the various contracts at issue[.]" (Am. Compl. at ¶ 278). However, under Pennsylvania law, an integration clause bars fraud and misrepresentation claims asserted against parties to a contract. *See Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 656 (W.D. Pa. 1999).

Parties to a contract—particularly one with an integration clause—are bound by their acknowledgements and representations, and may not later "change the deal" based on things they assert were said or promised outside of the contract. To find otherwise would render the integration clauses a nullity. Thus, Porter cannot pursue any of the Moving Defendants under Plaintiff's fraud or negligent misrepresentation theories.

4.     **Porter's Fraud and Misrepresentation Claims Fail for Lack of Justifiable Reliance.**

"[F]or a plaintiff to prevail on claims for fraud (or intentional misrepresentation) and negligent misrepresentation under the laws of Pennsylvania . . . he or she must prove justifiable reliance upon the misrepresentation at issue." *Benevento v. Life USA Holding, Inc.*, 61 F. Supp.

2d 407, 416 (E.D. Pa. 1999). As a matter of law, it "is not reasonable . . . to rely on oral promises that directly contradict the written agreements between the parties." *Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Investments*, 951 F.2d 1399, 1412 (3d Cir. 1991); *Bennett v. Itochu Int'l, Inc.*, 2012 WL 3627404, at \*21 (E.D. Pa. Aug. 23, 2012), *aff'd*, 572 F. App'x 80 (3d Cir. 2014).

Here, in Count III, which seeks recovery under a fraud theory, Porter alleges that Defendants made "misleading representations . . . pertaining to the uniqueness, patentability, and profitability . . . of their inventions." (Am. Compl. at ¶ 274). Porter further alleges in Count IV, which seeks recovery under a negligent misrepresentation theory, that "Defendants made misrepresentations and other statements in connection with their deceptive invention promotion, patent, manufacturing, licensing, and consultation services." (Am. Compl. at ¶ 293).

Porter's fraud and negligent misrepresentation averments are directly contradicted by the repeated disclosures acknowledged and countersigned by Plaintiff in the BIP Agreement, the Submission Agreement, and Intromark Proposal, stating "THE PURCHASE OF INVENTOR ASSISTANCE IS A HIGH-RISK EXPENDITURE." Exhibits 1, 3 and 4 to Schnapp Dec. Porter's averments are likewise contradicted by the detailed disclosure provided to, and signed by, Plaintiff Porter. *See* Exhibit 2 to Schnapp Dec. Porter further acknowledged that "InventHelp has made Client aware that the majority of inventions are not licensed by third parties and are not financially successful, and that by providing standardized submission services to Client, InventHelp does not make any representation or claim about the licensing and/or financial potential of Client's invention." Exhibit 3 to Schnapp Dec.

Because it was unreasonable as a matter of law for Porter to rely on any purported oral misrepresentations by Moving Defendants that directly contradict the parties' contracts and the

robust disclosures therein, Counts III and IV should be dismissed for failure to adequately plead

justifiable reliance. *See Mellon Bank*, 951 F.2d at 1412; *Bennett*, 2012 WL 3627404, at *21.

**C.     Porter Fails to State Claims Against the Moving Defendants for Breach of
        Contract Under Count V.**

Under Pennsylvania law, "three elements are necessary to properly plead a cause of

action for breach of contract: "(1) the existence of a contract, including its essential terms, (2) a

breach of a duty imposed by the contract, and (3) resultant damages." *Bishop v. GNC

Franchising LLC*, 403 F. Supp. 2d 411, 416 (W.D. Pa. 2005). Here, Porter alleges, in conclusory

fashion, that "Defendants failed to fulfill the obligations set forth in the above-referenced

contracts, thereby breaching their respective contracts[.]" (Am. Compl. at ¶ 301.) However,

Porter fails to identify any specific provision of the contracts she entered into with certain of the

Moving Defendants that they purportedly breached. *Wilkes v. State Farm Ins. Companies*, 2005

WL 1667396, at *2 (M.D. Pa. July 15, 2005) ("Plaintiff is cautioned that it is necessary for him

to recite within his amended pleading those provisions of the contract which he alleges have

been breached by Defendant.") Even a cursory review of the contracts between Porter and

certain Moving Defendants establishes that there was no breach:

- The BIP Agreement states that "InventHelp agrees to prepare a . . . 20-30 page
  bound report in which InventHelp assembles basic information and attempts to
  emphasize the most positive features of your idea." Exhibit 1 to Schnapp Dec.
  **InventHelp prepared and delivered the report.**

- The Submission Agreement states that "InventHelp will prepare a New Product
  Submission Brochure . . . [and] InventHelp will submit your invention to data
  base companies in an attempt to obtain a good faith review[.]" Exhibit 3 to
  Schnapp Dec. **InventHelp obliged by these contractual obligations.** (Am.
  Compl. at ¶180.)

- The Intromark Proposal states that "NOTHING IN THIS AGREEMENT SHALL
  BE CONSTRUED AS A REPRESENTATION, INDUCEMENT, PROMISE OR
  GUARANTEE THAT INTROMARK WILL OBTAIN ANY RESULTS, SALES

OR LICENSING AGREEMENTS FOR CLIENT, AS VERY FEW IDEAS ACHIEVE COMMERCIAL SUCCESS." Exhibit 4 to Schnapp Dec**. Intromark received interest from a licensing company, and issued a check to Porter in connection with same**. (Am. Compl. at ¶ 217.)

As can be seen from the highlighted relevant provisions of Porter's contracts with certain of the Moving Defendants, there has been no breach by Moving Defendants. *Cessna v. Rea Energy Cooperative, Inc.*, 2018 WL 4961176, at *3 (3d Cir. Oct. 15, 2018) (dismissing claim for breach of contract after reviewing the contract). While Porter may be dissatisfied with the results thus far, such does not constitute a breach of contract by Moving Defendants—particularly where Porter was repeatedly advised of the risk that her financial outlay will not result in commercial success or a net profit. *See* Exhibits 1-4 to Schnapp Dec.

> **D.    Porter Fails to State Claims Against the Moving Defendants for Breach of the Duty of Good Faith and Fair Dealing Under Count VI.**

Count VI should be dismissed because it is duplicative of Count V's breach of contract claim. "Pennsylvania does not recognize an independent cause of action for breach of the duty of good faith and fair dealing when a breach of contract claim is asserted." *U.S. Small Bus. Admin. v. Progress Bank*, 2004 WL 2980412 at *4 (E.D. Pa. Dec. 22, 2004).

Here, Porter asserts breach of contract as to "All Defendants." (Am. Compl. ¶¶ 304-309). Within Count VI, Porter seeks to vindicate those same contractual rights alleged to have been breached in Count V, alleging that (i) "[u]nder the contracts described herein, Plaintiff and Class Members reasonably expected Defendants to carry out the covenants set forth in those contracts," and (ii) "Defendants arbitrarily and unreasonably did not fulfill the various covenants set forth in the contracts." (Am. Compl. ¶¶ 306-307).

Count V (breach of contact) and Count VI (breach of the duty of good faith and fair dealing) are intertwined, resulting in Count VI being ripe for dismissal. *See Progress Bank*, 2004 WL 2980412, at *5 (granting motion to dismiss breach of the duty of good faith and fair dealing

claim where plaintiff "failed to establish that its claim for breach of the implied covenant of good faith and fair dealing is distinct and separate from its claim for breach of contract"). Thus, "[a] plaintiff cannot seek to recover from a defendant on a separate theory of breach of implied duty of good faith and fair dealing while maintaining an action for breach of contract, which includes that duty." *Id.* at *4. Accordingly, Count VI should be dismissed with prejudice.

### E.    Porter Fails to State Claims Against the Moving Defendants for Unjust Enrichment Under Count VII.

Porter asserts a thinly pled cause of action for unjust enrichment against "All Defendants." (Am. Compl. ¶¶ 310-314). However, "[i]t is well-settled in Pennsylvania that the existence of a contract prevents a party from bringing a claim for unjust enrichment." *Vantage Learning (USA), LLC v. Edgenuity, Inc.*, 246 F. Supp. 3d 1097, 1100 (E.D. Pa. 2017); *Jem Accessories, Inc. v. D&H Distributing Co.*, 2018 WL 3584790, at *2 (M.D. Pa. July 26, 2018). The Amended Complaint is replete with admissions that the parties signed several governing contracts. (Am. Compl. at ¶¶ 156, 165, 184). Since Porter's relationship with the Moving Defendants is governed by multiple contracts that she acknowledges, her claim for unjust enrichment necessarily fails and should be dismissed. *See Khawaja v. RE/MAX Cent.*, 151 A.3d 626, 633–34 (Pa. Super. Ct. 2016).

### F.    Porter Fails to State Claims Against Moving Defendant Intromark, Incorporated for Breach of Fiduciary Duty Under Count VIII.

Count VIII should be dismissed because it presupposes the existence of fiduciary duties that do not exist and which, accordingly, cannot give rise to any liability. "Fiduciary duties do not arise merely because one party relies on and pays for the specialized skill of the other party." *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 822 (Pa. 2017). Further, "[t]he superior knowledge or expertise of a party does not impose a fiduciary duty on that party or otherwise convert an arm's-length transaction into a confidential relationship." *Id.* at 823. "[S]uch a

holding would threaten to convert most standard professional services contracts into fiduciary relationships," which is inconsistent with Pennsylvania law. *See eToll, Inc.*, 811 A.2d at 22. "If parties to routine arm's-length commercial contracts for the provision of needed goods or services were held to have a special relationship, virtually every breach of such a contract would support a tort claim." *Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc.*, 28 F. Supp. 2d 947, 953 (E.D. Pa. 1998).

Here, Porter cannot allege that the requisite "special relationship" existed between her and Intromark. Thus, Plaintiff's breach of fiduciary duty claim must be dismissed because no such duty, as a matter of law, can arise from the services agreements entered into between Plaintiff and certain of the Moving Defendants. *See Valley Forge*, 28 F. Supp. 2d at 953 (granting motion to dismiss when "Plaintiff cites no case in which such a special relationship was found to exist between parties to an arms length business contract").

Further, Count VIII also fails on account of the gist of the action doctrine. Porter expressly pleads that Intromark's purported fiduciary duties arose "pursuant to contracts between the parties," whereby "Intromark, Inc. agreed to act in Plaintiff's best interests and was given the exclusive right to negotiate and execute contracts" on Plaintiff's behalf. (Am. Compl ¶ 319). Indeed, according to Plaintiff, "the Intromark contract creates a fiduciary relationship between the client . . . and Intromark." (Am. Compl. ¶ 188).

However, in Pennsylvania, "breach of fiduciary duty claims are barred by the gist of the action doctrine if there are no allegations of breach of fiduciary duty or duty of loyalty that transcend or exist outside of the parties' contractual agreements." *DePuy Synthes Sales, Inc. v. Globus Medical, Inc.*, 259 F. Supp. 3d 225, 235 (E.D. Pa. 2017). Porter has expressly pled that Moving Defendants' non-existent fiduciary duties allegedly arose from the "Intromark contract"

(Am. Compl. ¶ 188). Thus, any fiduciary duty claims asserted against Intromark are barred by

the gist of the action doctrine. *See Takeda Pharm. USA, Inc. v. Spireas*, 2017 WL 4401988, at

*18 (E.D. Pa. Oct. 3, 2017) (dismissing breach of fiduciary duty claim based on the gist of the

action doctrine when it "is a restatement of Takeda's contract claim"); *Brown & Brown, Inc. v.

Cola*, 745 F. Supp. 2d 588, 621 (E.D. Pa. 2010).

> **G.    Porter Fails to State Claims Against Moving Defendants for Violations of the
> American Inventors Protection Act of 1999 Under Count IX.**

Porter alleges that with her Submission Agreement, she received disclosures stating that:

"The total number of customers who have contracted with InventHelp in the past 5 years is

8,095." (Am. Compl. ¶ 166); "The total number of customers known by InventHelp to have

received license agreements for their inventions as a direct result of InventHelp is 167." (Am.

Compl. ¶ 168); and "The total number of clients known to have received more money than they

paid InventHelp for submission services as a direct result of these services is 38." (Am. Compl.

¶ 169). Porter alleges, in conclusory fashion, that these statements are improper, "inaccurate,

internally inconsistent, and fraudulent." (Am. Compl. at ¶ 326.)

Through the very documents quoted by Porter, it is clear that the necessary disclosures

were provided. While Porter has generally averred that she is entitled to relief under the AIPA,

she has not made the requisite "showing" of "facts" necessary to proceed past the motion to

dismiss stage on her AIPA claim. In any event, review of the AIPA-compliant disclosures

provided to Porter (at Exhibit 2 to the Schnapp Dec.) indicates that she was apprised of all of the

required information under 35 U.S.C. § 297(a), including:

> 1.   The total number of inventions evaluated by InventHelp® for commercial poten-
> tial in the past 5 years is 0. InventHelp® does not attempt to evaluate inventions and accepts
> most inventions for its services. Therefore, no inventions received positive evaluations from
> InventHelp®, and no inventions received negative evaluations from InventHelp®.

2. The total number of customers who have contracted with InventHelp® in the past 5 years is 8,095.

3. The total number of customers to have received a net financial profit as a direct result of invention promotion services provided by InventHelp® is unknown. However, the total number of clients known to have received more money than they paid InventHelp® for submission services as a direct result of these services is 38.

4. The total number of customers known by InventHelp® to have received license agreements for their inventions as a direct result of InventHelp® services is 167.

6. There are no previous invention promotion companies with which InventHelp® or its officers have collectively or individually been affiliated in the previous 10 years. InventHelp® and Western InventHelp® are registered names of Invention Submission Corporation and Western Invention Submission Corporation. InventHelp® and Western InventHelp® are affiliated with Intromark Incorporated which attempts to market inventions where substantial interest has been expressed. Their parent company is Technosystems Consolidated Corporation. The address of these companies is 217 Ninth Street, Pittsburgh, PA 15222-3506.

The very documents that Porter relies upon establish that Moving Defendants have complied with their AIPA obligations. Porter's conclusory allegations that such disclosures are "false" or "internally inconsistent" are insufficient to withstand a motion to dismiss. *Postie v. Frederick*, 2015 WL 7428616, at *3 (M.D. Pa. Nov. 23, 2015); *Catalano v. Twp. of Upper Freehold*, 2013 WL 5863742, at *4 (D.N.J. Oct. 30, 2013) (finding that Plaintiff's "claims are facially implausible" when Plaintiff "applies conclusory labels like 'false,' 'wrong,' and 'unlawful' to the acts of" defendants "but [s]he does not set forth factual allegations that, if proven, would justify the labels").

## H.    Porter Fails to State Claims Against Moving Defendants for Violations of the Telephone Consumer Protection Act Under Count X.

"To plausibly plead a claim under the TCPA, [p]laintiffs must do more than simply parrot the statutory language." *Montinola v. Synchrony Bank*, 2018 WL 4110940, at *2 (D.N.J. Aug. 28, 2018). "[P]laintiff must allege that (1) a call was made; (2) the caller used an Automatic

Telephone Dialing System or artificial or prerecorded voice; (3) the telephone number called was assigned to a cellular telephone service; and (4) the caller did not have prior express written consent of the recipient." *Richardson v. Verde Energy USA, Inc.*, 2016 WL 7380708, at *2 (E.D. Pa. Dec. 19, 2016).

The thrust of Count X is that Moving Defendants improperly "use[d] automatic telephone dialing systems and/or other prohibited means to call Class Plaintiffs' cell phones after being told to cease and desist" (Am. Compl. ¶ 331). These averments exemplify the "conclusory pleadings" prohibited under the Federal Rules. Count X is nearly identical to the TCPA claim dismissed under Rule 12(b)(6) in *Trumper*:

> [W]hile the Amended Complaint takes the position that the calls were placed using an automatic telephone dialing system—a random number or sequential number generator— it appears that the calls were directed at [Plaintiff], who apparently has an account with [Defendants]. Accordingly, it appears that the calls were not random.

*Trumper v. GE Capital Retail Bank*, 79 F. Supp. 3d 511, 513 (D.N.J. 2014).

Porter has also not pled a plausible cause of action under the TCPA because she has not made any colorable "robo dialing" claim. *See* 47 U.S.C. §§ 227(a)(1) & (b)(1)(A); *Trumper*, 79 F. Supp. 3d at 513 (granting motion to dismiss TCPA claim) ("[Plaintiff's] TCPA claim fails under *Twombly* and *Iqbal* because [Plaintiff] makes only conclusory allegations that [Moving Defendants] placed calls using an automatic telephone dialing system or an artificial or prerecorded voice.")

Since Plaintiff contends that all of the Moving Defendants' calls were to individuals like Plaintiff, with whom Moving Defendants had preexisting business relationships for invention submission services, it is implausible for Moving Defendants to have liability for making "random" calls placed through an automatic telephone dialing system.

**I.      Porter Fails to State Any Claims Against Moving Defendant Robert Susa.**

Porter's pleading is similarly deficient with regard to the claims advanced against Mr. Susa. All that Plaintiffs allege is that Mr. Susa is "President of Defendants Invention Submission Corporation, Technosystems Consolidated Corporation, Technosystems Service Corporation, Western Invention Submission Corporation, Innovation Communications, Intromark, Inc., and InventHelp." Am. Compl. at ¶ 37.

Since Porter is seeking to hold Mr. Susa individually liable, she must plead facts to establish that Mr. Susa is the "alter ego" of the corporate defendants. *See Aluminium Bahrain B.S.C. v. Dahdaleh,* 17 F. Supp. 3d 461, 471 (W.D. Pa. 2014) ("The Third Circuit alter ego test requires the court to look at various factors . . . to determine whether the corporation is merely a façade for the operations of the dominant stockholder."). The Amended Complaint is lacking in this regard. *Id.* at 471 ("[T]he pleadings lack sufficient facts from which [plaintiff] could assert alter ego" when the "pleadings do not address any of the alter ego factors"); *Partners Coffee,* 700 F. Supp. 2d at 737 (Plaintiff "provided little or nothing in the way of factual allegations to support her contention that liability should be imposed on [an owner]").

Moreover, as to Porter's contract-based claims, "[w]henever a corporation makes a contract, it is the contract of the legal entity, of the artificial being created by the charter, and not the contract of the individual members." *See Wicks v. Milzoco Builders, Inc.*, 503 Pa. 614, 620 (Pa. 1983); *see also Walsh v. Alarm Sec. Grp., Inc.*, 95 F. App'x 399, 402 (3d Cir. 2004) (affirming trial court's dismissal of breach of contract claims asserted individually against corporation's CEO and COO because "[plaintiff] does not allege that [CEO] or [COO] made promises or mislead him while acting in their individual capacity").

The same holds true for Porter's tort-based claims, as "[l]iability [] attaches only where the corporate officer is an actor who participates in the wrongful acts." *Wicks v. Milzoco*

*Builders, Inc.*, 470 A.2d 86, 90 (Pa. 1983). There are no averments whatsoever regarding Mr. Susa's participation in any tortious conduct. *See McGovern v. Jack D's, Inc.*, 2004 WL 228667, at *3 (E.D. Pa. Feb. 3, 2004) (dismissing tort claims asserted against corporation's owners when Plaintiff "failed to allege facts which would show that the [individual defendants] directed, participated, or cooperated in tortious conduct").

**IV.    If the Court Is Not Inclined To Dismiss Some Or All Of Plaintiffs' Claims, Then This Action Should Be Transferred To The United States District Court For The Western District Of Pennsylvania.[5]**

If the Court is not inclined to dismiss some or all of Plaintiffs' claims against Moving Defendants, this case should be transferred to the United States District Court for the Western District of Pennsylvania. Moving Defendants are based in Pennsylvania, and transfer would convenience the parties, witnesses and relevant discovery. Further, Moving Defendants are burdened with simultaneously defending a near-identical class action, brought by Plaintiffs' counsel, that is proceeding in the Western District of Pennsylvania, *Calhoun v. Invention Submission Corporation d/b/a InventHelp et al.*, 2:18-cv-01022-RCM (the "*Calhoun* Case" or "Pennsylvania action"). Transferring this action to the Western District of Pennsylvania will allow Moving Defendants to seek consolidation of both actions, promoting efficiency for the parties and judicial system.

**A.    Standard of Review on a Motion to Transfer Venue.**

Under the Federal Rules of Civil Procedure, "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). 28 U.S.C. § 1404(a) "does not condition transfer on the initial forum's being 'wrong' and it permits transfer to any district where venue is also proper (*i.e.*,

---

[5] "Section 1404(a) sets no time limit at which a motion to transfer may be made." *Kolko v. Holiday Inns, Inc.*, 672 F. Supp. 713, 716 (S.D.N.Y. 1987).

where the case might have been brought) or to any other district to which the parties have agreed by contract or stipulation." *Winter v. Am. Institute of Medical Sciences & Ed.*, 242 F. Supp. 3d 206, 215 (S.D.N.Y. 2017); 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.").

"The Second Circuit applies a two-part test to motions to transfer venue under § 1404(a)." *Smart Skins LLC v. Microsoft Corp.*, 2015 WL 1499843, at *4 (S.D.N.Y. Mar. 27, 2015). "First, the district court must determine if the action might have been brought in the district to which transfer is sought." *Id.* "As the statute makes clear, Defendants' first task is to show that the instant action could have been brought originally in the transferee district." *Pace v. Quintanilla*, 2013 WL 5405563, at *2 (S.D.N.Y. Sept. 23, 2013). Under the second part of the venue test, "the district court must determine if the convenience of parties and witnesses and the interest of justice favor transfer." *Winter*, 242 F. Supp. 3d at 215.

District courts have broad discretion in making determinations of convenience under Section 1404(a) and requests to transfer are evaluated using the following factors: "(1) the convenience of the witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with governing law, (8) the weight accorded to plaintiff's choice of forum, and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Id.* "No one factor is dispositive and the relative weight of each factor depends on the particular circumstances of the case." *Id.*

**B.** **This Action Could Have First Been Brought in the Western District of Pennsylvania.**

This action could have first been brought in the Western District of Pennsylvania. Under 28 U.S.C. § 1391(b) venue is proper in, "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Here, the thrust of Plaintiffs' case is that the Moving Defendants engaged in a purported joint conspiracy to scam and defraud inventors, that they breached contracts, breached purported duties and made misrepresentations to potential inventors. The Moving Defendants, six entities and one individual, are all based in Pennsylvania. (Am. Compl. at ¶¶ 32-37).

It is without question that "a substantial part of the [alleged] events or omissions giving rise to the claim occurred" in the judicial district in which each of seven Moving Defendants reside, are incorporated or hold their principal places of business. *Banco de Seguros del Estado v. Employers Ins. of Wausau*, 171 F. Supp. 2d 330, 333 (S.D.N.Y. 2001) ("Here there is no question that this action could have been brought in the Western District of Wisconsin—the defendant is organized under the laws of and has its principal place of business in that state."); *Cheong v. Okayama Enterprises, Inc.*, 2000 WL 1404379, at *1 (S.D.N.Y. Sept. 25, 2000) ("[T]his case could have been brought in the Central District of California since defendant Okayama Enterprises is incorporated in California and has its principal place of business in San Gabriel, California.")

**C.** **The Interests of Justice, and the Convenience of Parties and Witnesses Favor Transfer to the Western District of Pennsylvania.**

As already set forth above, the Court is to generally consider nine factors in assessing whether transfer of venue to the Western District of Pennsylvania is appropriate: (1) convenience of witnesses; (2) convenience of the parties; (3) location of relevant documents and the relative

ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of

process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7)

the comparative familiarity of each district with the governing law; (8) the weight accorded to

plaintiff's choice of forum; and (9) judicial economy and the interests of justice. *Freeplay Music,*

*LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 616 (S.D.N.Y. 2016).

These factors militate in Moving Defendants' favor and support the transfer of this action

to the Western District of Pennsylvania.

### 1.   The Interests of Justice Weigh in Favor of Transfer to the Western District of Pennsylvania.

The interests of justice weigh heavily in favor of transferring this action to the Western

District of Pennsylvania. When applying the "interests of justice" factor, "many courts have

recognized that transfer is appropriate when two cases involving the same issues are

simultaneously pending in different district courts." *Mastr Asset Backed Sec. Tr. 2007-WMC1, ex*

*rel. U.S. Bank Nat. Ass'n v. WMC Mortg. LLC*, 880 F. Supp. 2d 418, 424 (S.D.N.Y. 2012).

On July 09, 2018, one business day after Moving Defendants first sought a pre-motion

conference in the Southern District of New York (while this case was pending with Judge Castel

in Manhattan), Moving Defendants were served with a near identical class action complaint in

the Eastern District of Pennsylvania, which is now being tried in the Western District of

Pennsylvania. Plaintiffs' counsel in this action, Oxman Law Group, PLLC, are also lead counsel

to Plaintiffs in the Pennsylvania action. The Amended Complaint in the Pennsylvania action also

stylizes itself as a nationwide class action against Moving Defendants, and makes nearly

identical claims through many dozens of verbatim paragraphs. A true and correct copy of the

Amended Complaint in the Pennsylvania action is attached as Exhibit 6 to the Schnapp Dec.

It is a waste of time and resources to simultaneously try and defend two near-identical putative nationwide class actions in different venues. More importantly, it is a waste of judicial resources for both of these actions to proceed in separate courthouses. Situations like this are most appropriate for transfer of venue due to the "strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided . . . and that 'the existence of a related action in the transferee district' weighs heavily in favor of transfer when considering judicial economy and the interests of justice." *Wald v. Bank of America Corp.*, 856 F. Supp. 2d 545, 550 (E.D.N.Y. 2012) (quoting *Wyndham Assocs. v. Bintliff,* 398 F.2d 614, 619 (2d Cir. 1968)).

Just like in *In re Collins*, the Pennsylvania action here "contain[s] similar allegations and nam[es] some of the same defendants as the present action, [which] 'heavily' favors transfer." *In re Collins & Aikman Corp. Securities Litigation*, 438 F. Supp. 2d 392, 398 (S.D.N.Y. 2006). Importantly, "[t]he substantial factual overlap between the cases makes it highly likely that [parties in both actions] will need access to the same witnesses and proof. . . which heavily favors transfer of this case in the interests of judicial economy so all discovery and factual disputes can be determined by the same court, following efficiently coordinated discovery across both actions." *Id.* at 398–99. It would "be wasteful in the extreme if discovery and trial of these matters were to be duplicated in two different districts." *Pence v. Gee Group, Inc.*, 236 F. Supp. 3d 843, 854 (S.D.N.Y. 2017).  With regard to the class action context, it would be a waste of resources to proceed on two separate but parallel paths, particularly if both of the actions reach the motions for class certification stage.

Moving Defendants anticipate that Plaintiffs will continue to argue that there is a broad and cohesive fraudulent scheme purportedly being perpetrated by and between all defendants to justify maintaining the action in this Court. However, as already set forth in detail herein, these allegations are without merit.

Moreover, Plaintiffs agreed in open Court that they would be amenable to transferring the claims as asserted against Moving Defendants to the Western District of Pennsylvania. Exhibit 5 to Schnapp Dec. at 7:11-15 ("We would be amenable to moving the [plaintiffs who have contracts with InventHelp] to Pittsburgh."); *Id.* at 11:14-18 ("If we are convinced that Invents [Company] and InventHelp - - we don't have real evidence that these two entities are related, then we would be amenable to proceeding in New York only as to Invents [Company]."); *Id.* at 26:14-19 ("One subclass of plaintiffs has contracts with InventHelp. Okay? It makes sense for that subclass to be subsumed into the pending Pittsburgh action[.]")

Plaintiffs' counsel stipulated to dismissing **five** other defendants on the record in open court, agreeing to only proceed against them in the Pennsylvania action, conceding that "[their] proposed plaintiff, is not representative of the class that has some type of relationship with these attorneys." Exh. 5 to Schnapp Dec. at 20:24-25:4.

Despite Plaintiffs' repeated acknowledgments that it would be sensible to transfer the action against Moving Defendants to the Western District of Pennsylvania, Plaintiffs may argue that even *if* the subclass of Plaintiffs who have contracted with Moving Defendants is transferred to Pennsylvania, Moving Defendants should still be a part of the action in this Court by virtue of the subclass that has contracted with Invents Company and other unrelated defendants. However, Plaintiffs' conspiratorial allegations do not support shackling Moving Defendants to claims that solely relate to other defendants. As this Court noted, it is clear that Plaintiffs "ha[ve] some

issues with defining [their] class" and that Plaintiffs need to allege facts supporting a piercing of the corporate veil between Moving Defendants and Invents Company. Exh. 5 to Schnapp Dec. at 29:12-13 and 31:17-21. It would be a waste of the parties' and this Court's time and resources to hold Moving Defendants hostage to this class action, in addition to the Pennsylvania action, just because Plaintiffs baselessly allege that all defendants are interrelated.

      2.      **Transfer to the Western District of Pennsylvania is Convenient to the Parties, and Plaintiffs' Choice of Forum is Not Entitled to Deference.**

"The convenience of party and nonparty witnesses is usually the most important consideration in deciding a motion to transfer venue . . . When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." *AEC One Stop Group, Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 529 (S.D.N.Y. 2004).

Here, transfer to the Western District of Pennsylvania will convenience the relevant parties and witnesses. Moving Defendants represent the large majority of the defendants in this action. Key witnesses, which would include Moving Defendants' corporate representatives, are all located in the Western District of Pennsylvania. Joe DiResta, an individual referenced throughout Plaintiff Porter's allegations, is also located in the Western District of Pennsylvania. (Am. Compl at ¶ 192-196, 201, 203-216).

Further, many common witnesses will also likely be required to testify in the Pennsylvania action. It would be an inconvenience to require parties and witnesses to provide testimony both in New York for this action, and in Pennsylvania for the *Calhoun* Case. The Court's analysis in *Goggins v. Alliance Capital Management, L.P.* is applicable:

> Location alone does not determine convenience when the denial of transfer would result in two pretrial discovery processes going forward simultaneously. Discovery in both actions is likely to be virtually the same. Because many of the same individuals are mentioned in both complaints, their testimony will likely be sought in both actions. The

> inconvenience of some defendants and witnesses traveling to New Jersey from New York
> City is significantly outweighed by the convenience of providing testimony in a single
> consolidated action.

279 F. Supp. 2d 228, 233 (S.D.N.Y. 2003).

Plaintiffs may argue that transferring this case to the Western District of Pennsylvania will inconvenience Plaintiff Zanotti.[6] However, this inconvenience is immaterial, particularly in the context of a class action because "in class actions less weight is given to the plaintiff's choice . . . The reason is that in a class action there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class's claim." *Goggins*, 279 F. Supp. 2d at 232; *see also Warrick v. Gen. Elec. Co.,* 70 F.3d 736, 741 n.7 (2d Cir. 1995) ("[T]he plaintiff's choice of forum is a less significant consideration in a (here, putative) class action than in an individual action").

It is inconsistent for a plaintiff to assert a purported class action on behalf of a nationwide class consisting of "all persons and entities in the United States who purchased goods and/or services from Defendants," but also insist that the case remain in her own backyard for her own convenience. *Jones v. Walgreen Co.*, 463 F. Supp. 2d 267, 274 (D. Conn. 2006) ("the Court would ordinarily give Ms. Jones's choice of forum significant, though not controlling, weight. But this is not an individual action by Ms. Jones . . . Because Ms. Jones elected to bring her lawsuit as a class action, her choice of forum is entitled to less weight.")

     **3.**     **The Location of Relevant Documents and Relative Ease of Access to Sources of Proof Weighs in Favor of Transfer.**

The location of relevant documents and the primary sources of proof would be the Western District of Pennsylvania, where Moving Defendants are based and hold their principal

---

[6] Moving Defendants note that the named plaintiff in the Pennsylvania action is a Texas resident, and Plaintiff's counsel there has made no allegations that it is an inconvenient forum for the out-of-state named Plaintiff.

places of business. Therefore, this factor weighs in favor of transfer to the Western District of Pennsylvania. *See In re Nematron Corp. Securities Litigatio*n, 30 F. Supp. 2d 397, 403 (S.D.N.Y. 1998) (holding that in class action, the vast majority of documents would be located in the defendants' headquarters); *In re Collins & Aikman Corp. Sec. Litig.,* 438 F. Supp. 2d 392, 396–97 (S.D.N.Y. 2006) (stating, in the context of a class action with numerous plaintiffs throughout the country, that, "because it is at least marginally more convenient to conduct this litigation in [defendant's home district,] where most of the relevant documents are located, this factor tips slightly towards transfer.")

####       4.       The Locus of the Operative Facts Weighs in Favor of Transfer.

Any operative alleged facts relevant to defending this claim would stem from Pennsylvania, where Moving Defendants principally do business. Plaintiff Porter's allegations that may bear some connection to New York should not hold weight in the context of a class action. As explained in *Forsher v. J.M. Smucker Co.*:

[B]ecause this is a putative class action brought on behalf of a California class *and* a multi-state class, ultimately the loci of the operative facts involving Plaintiffs are spread across . . . allegedly, all fifty states, whereas the *main* locus of operative facts as to Defendant[ ] is [at its corporate headquarters] . . . Because the "main" and most geographically concentrated "locus of operative facts" relevant to this action is [Defendant's headquarters], this factor tends to weigh in favor of Defendant and transfer to the Northern District of Ohio.

2019 WL 235639, at *6 (E.D.N.Y. Jan. 16, 2019); *see also Jones v. Walgreen Co.*, 463 F. Supp. 2d 267, 277 (D.Conn. 2006) ("While the locus of operative facts with respect to Ms. Jones is primarily in Connecticut, the Court must consider the fact that this case may become a nationwide class action.")

5.      **The Comparative Familiarity of Each District with Governing Law Weighs in Favor of Transfer.**

Any class plaintiffs that have allegedly contracted with Moving Defendants will have Pennsylvania choice-of-law provisions in their contracts. Therefore, the large majority of claims allegedly involving Moving Defendants will be assessed under Pennsylvania law. Respectfully, the Western District of Pennsylvania has more comparative familiarity with Pennsylvania law. *Pence v. Gee Group, Inc.*, 236 F. Supp. 3d 843, 855 (S.D.N.Y. 2017) ("The Bylaws will presumably be construed in accordance with Illinois law, [a] federal court in Illinois will be more familiar with the governing law and thus this factor favors transfer."); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 401 (S.D.N.Y. 2010) ("Texas courts are also more familiar with Texas law than this court is, and Texas law governs most, if not all, of the claims in Schultz's suit.").

For the foregoing reasons, this action is appropriately subject to discretionary transfer to the Western District of Pennsylvania under 28 U.S.C. § 1404.

## CONCLUSION

For the foregoing reasons, Counts I through X of Plaintiffs' Amended Complaint against

Moving Defendants should be dismissed with prejudice. In the alternative, this action should be

transferred to the United States District Court for the Western District of Pennsylvania.

Dated: New York, New York
      February 20, 2019

                                  Respectfully submitted,

                                  **FOX ROTHSCHILD LLP**

                          By: _____
                              Daniel A. Schnapp, Esq.
                              David J. Garraux, Esq. (*pro hac vice*)
                              Philip Z. Langer, Esq.
                              101 Park Avenue, 17th Floor
                              New York, NY 10178
                              T: (212) 878-7900
                              F: (212) 692-0940

                              *Attorneys for Moving Defendants*
                              *Invention Submission Corporation*
                              *d/b/a InventHelp ("InventHelp"),*
                              *Technosystems Consolidated Corp.,*
                              *Technosystems Service Corp., Western*
                              *Invention Submission Corp., Universal*
                              *Payment Corp., Intromark Inc. and*
                              *Robert J. Susa*