```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  6/2/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JULIE ZANOTTI, RONESE BROOKS, and
SHERRY PORTER, on behalf of themselves and all
other persons similarly situated,

                                    Plaintiffs,

         -against-

INVENTION SUBMISSION CORPORATION d/b/a
INVENTHELP, TECHNOSYSTEMS
CONSOLIDATED CORP., TECHNOSYSTEMS
SERVICE CORP., WESTERN INVENTION
SUBMISSION CORP., UNIVERSAL PAYMENT
CORPORATION, INTROMARK
INCORPORATED, INNOVATION CREDIT CORP.,
ROBERT J. SUSA, INVENTS COMPANY,
INVENTS COMPANY, LLC, GLOBAL EXPRESS
MANUFACTURING, SMITH LILLY
MANUFACTURING, ZAMBRO
MANUFACTURING, INC., ABRAMS GENTILE
ENTERTAINMENT, LLC, ABRAMS GENTILE
ENTERTAINMENT, INC., ASHKAN NAJAFI,
ESQ., RG PATENT CONSULTING LLC, RACHEL
GILBOY, THOMAS FROST, P.A., THOMAS
FROST, LAW OFFICE OF KYLE FLETCHER, P.C.,
KYLE A. FLETCHER, CROSSLEY &
STEVENSON, KAUFHOLD & DIX, RUTH EURE,
PATENTS FOR PEOPLE, JOHN DOE
COMPANIES 1-10, and JOHN DOE INDIVIDUALS
1-10,

                                    Defendants.

No. 18-cv-5893 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

Plaintiffs Julie Zanotti and Ronese Brooks[1] ("Plaintiffs") bring this action against

Defendants alleging violations of the American Inventors Protection Act of 1999 ("AIPA"), the

---

[1] Plaintiff Sherry Porter has voluntarily dismissed all of her claims against Defendants without prejudice as of March 21, 2019.  (ECF No. 118).

Telephone Consumer Protection Act ("TCPA"), and New York state consumer protection statutes, and stating various common law claims sounding in, *inter alia*, fraud, breach of contract, and breach of the implied covenant of good faith and fair dealing.  (*See* Am. Compl. (ECF No. 21).)  Plaintiffs originally filed suit in the Supreme Court of the State of New York, Westchester County, on or about January 25, 2018.  (*See* Notice of Removal (ECF No. 4).)  On July 2 2018, Defendant Intromark Incorporated ("Intromark") filed a Notice of Removal removing the suit to federal court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").  (*Id.*)

Presently before the Court are (1) Plaintiffs' motion to remand this case to the Supreme Court of the State of New York, Westchester County, for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c), (ECF No. 127), (2) the motion of Defendants Invention Submission Corporation d/b/a InventHelp ("InventHelp"), Technosystems Consolidated Corp., Technosystems Service Corp., Western Invention Submission Corp., Universal Payment Corp., Intromark, and Robert J. Susa (collectively, "InventHelp Defendants") to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or transfer venue to the United States District Court for the Western District of Pennsylvania, (ECF No. 136); (3) the motion of Defendant Ashkan Najafi, Esq., to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), (ECF No. 145), and (4) the motion of Rachel Gilboy and RG Patent Consulting LLC (together, the "RG Patent Defendants") to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), (ECF No. 149). InventHelp Defendants oppose Plaintiff's motion to remand.  (ECF No. 130).  Plaintiffs oppose each of the motions to dismiss.  (ECF Nos. 141, 153, 154).  For the following reasons, Plaintiffs' motion to remand is DENIED, InventHelp Defendants' motion to dismiss or transfer venue is

GRANTED IN PART, Defendant Najafi's motion to dismiss is GRANTED IN PART, and RG

Patent Defendants' motion to dismiss is GRANTED IN PART.

## BACKGROUND[2]

In 2014, Plaintiff Zanotti, a professional hair stylist, believed she had created a new

invention: a hollow comb that could be filled with styling product to evenly distribute the

product through the hair by ejecting it through the teeth of the comb.  (Am. Compl. ¶ 58.)  After

seeing television commercials advertising the services of Defendant InventHelp, Zanotti

contacted InventHelp by phone and gave her contact information to an InventHelp

representative.  (*Id.* ¶¶ 59–61.)  Zanotti subsequently received a call from Defendant Invents

Company and met with a representative of Invents Company named Pamela Mitchell on May 5,

2014, at Invents Company's New Jersey offices.  (*Id.* ¶¶ 62 & 69.)

At the meeting, Mitchell assured Zanotti that her idea was viable, original, and profitable.

She also represented to Zanotti that Invents Company and Defendant Invents Company LLC

(together, "Invents"), had contacts at Paul Mitchell Hair Products who would be very interested

in Zanotti's idea.  (*Id.* ¶ 70.)  Mitchell told Zanotti that Invents would partner with her to market

her invention for $7,950.00, but Zanotti advised that she could not afford the fee.  (*Id.* ¶¶ 74–75.)

Mitchell then suggested that Zanotti take out a loan from a separate company, Defendant

Innovations Credit Corporation ("Innovations Credit"), and provided her with a loan application

form.  (*Id.* ¶¶ 76–77.)  Mitchell urged Zanotti to take out the loan with Innovations Credit,

promising that it was interest-free and required no credit check.  (*Id.* ¶¶ 80–82.)  Ultimately,

Zanotti executed a promissory note dated May 5, 2014, with Innovations Credit for the amount

---

[2] The facts in this section are taken from Plaintiffs' Amended Complaint, (ECF No. 21), unless otherwise specified.  The Court omits factual allegations relating solely to former Plaintiff Porter, who has voluntarily withdrawn her claims.  (ECF No. 118.)

of $7,950.00.  (*Id.* ¶ 83.)  Contrary to Mitchell's representations, the promissory note provides for interest at a rate of 18% per annum.  (*Id.* ¶ 84.)

At the same meeting, Zanotti entered into a "New Product Marketing Agreement" with Invents Company LLC whereby she retained Invents to market her invention to industry in exchange for a one-time fee of $7,950.00.  (*Id.* ¶ 86.)  Pursuant to the marketing agreement, Invents made specific promises to "commercialize [Zanotti's] invention concept" in various manners and use best efforts to submit the concept to companies for their review.  (*Id.* ¶¶ 87–89.)

In Spring 2015, Invents referred Zanotti to Defendant Ashkan Najafi, a Florida attorney, for purposes of obtaining a utility patent for her proposed invention.  (*Id.* ¶ 91.)  Najafi presented himself as unaffiliated with Invents or InventHelp.  (*Id.* ¶ 92.)  However, Plaintiffs state that Najafi receives all or a substantial percentage of his business from those entities.  (*Id.* ¶ 91.)  By letter dated May 7, 2015, Zanotti engaged Najafi to represent her for purposes of obtaining a utility patent for the sum of $4,490.00, plus an additional $950.00 to $1,500.00 per response for each "Office Action" that the United States Patent and Trademark Office took rejecting her utility patent.  (*Id.* ¶ 93.)  Najafi allegedly knew that Zanotti's idea was not suitable for a utility patent since it was not novel, non-obvious, or otherwise unavailable to the public, but did not inform her of this fact.  (*Id.* ¶¶ 94–95.)

On December 15, 2015, Zanotti received an email from "cynthia@invents.com" informing her that Invents would forward her idea to Defendant Zambro Manufacturing, Inc. ("Zambro") and "will notify you if they are interested."  (*Id.* ¶ 96.)  On January 15, 2016, Zanotti received an email from Ray Anderson on behalf of Zambro, advising her that Zambro was interested in her invention and wanted to offer her a licensing and manufacturing agreement.  (*Id.* ¶ 98.)  Zanotti spoke to Anderson on the phone and agreed to sign a manufacturing and licensing

agreement with Zambro, promising to pay Zambro $3,000.00.  (*Id.* ¶¶ 98–100.)  Zanotti

forwarded her credit card information to Zambro to make a $2,000.00 down-payment.  (*Id.* ¶

100.)  On February 2, 2016, her card was charged $2,000.00 by Defendant Global Express

Manufacturing ("Global Express").  (*Id.*)

   None of the entities or individuals with which Zanotti dealt fulfilled their contractual and

verbal promises to Zanotti, in spite of her paying over $10,000.00.  (*Id.* ¶ 102.)

   In 2016, Plaintiff Brooks believed she had created a new invention: eyeglasses with

detachable and adjustable arms.  (*Id.* ¶ 104.)  Like Zanotti, Brooks contacted InventHelp,

provided her contact information, and then received a call from Invents Company.  (*Id.* ¶¶ 105–

08.)  Brooks met with a representative of Invents Company named Philip Brown at the New

York offices of Invents Company on February 2, 2016.  (*Id.* ¶ 109.)  Brown told Brooks that she

would have to pay a fee of $795.00 to begin working with Invents.  (*Id.*)  Brooks declined.  (*Id.*)

   Later in February, Brown called Brooks advising that Invents Company was extremely

interested in her invention and believed it would be very profitable.  (*Id.* ¶ 110.)  Brooks

scheduled another meeting with Invents, this time with a representative named Chet

Dombrowski, on March 2, 2016.  (*Id.* ¶¶ 111–12.)  Dombrowski represented that Brooks' idea

was worth "billions."  (*Id.* ¶ 112.)  At the end of the meeting, Brooks entered into a

nondisclosure agreement with Invents Company and paid $595.00 by check for an initial patent

search and project summary digest.  (*Id.* ¶ 114.)

   Shortly thereafter, Invents advised Brooks that the initial patent search showed no similar

patents and that Invents wanted to partner with Brooks and proceed to developing, marketing,

advertising, and securing license agreements or manufacturing deals for her invention.  (*Id.* ¶

115.)  Brooks met with Dombrowski for a third time on April 22, 2016.  (*Id.* ¶ 117.)  At that

meeting, Dombrowski proposed a contract price of $10,000.00, but offered Brooks a reduction of that price by $1,050.00 if she signed that same day.  (*Id.*)  Ultimately, Brooks entered into a marketing agreement with Invents Company LLC similar to the one Zanotti entered, at a contract price of $8,950.00.  (*Id.* ¶ 118.)

In October 2017, Invents referred Brooks to Defendant RG Patent Consulting for purposes of obtaining a utility patent for her invention.  (*Id.* ¶ 119.)  Plaintiffs state that RG Patent Consulting receives all or a substantial percentage of its business from Invents or InventHelp.  (*Id.* ¶ 91.)  According to Plaintiffs, the attorney with whom Brooks worked knew that her invention was not eligible for a utility patent but did not advise her of this fact.  (*Id.* ¶ 120.)  Brooks paid $2,800.00 to RG Patent Consulting for a utility patent.  (*Id.* ¶ 119.)

Months passed and Invents failed to return any of Brooks' calls, until someone who introduced himself as Chet Dombrowski of Global Express contacted Brooks on January 4, 2018.  (*Id.* ¶¶ 122–23.)  Plaintiffs assert that this was the same Chet Dombrowski with whom Brooks met on behalf of Invents in 2016, but Dombrowksi did not recall the prior meetings.  (*Id.* ¶¶ 123–24.)  Dombrowski told Brooks that Global Express wanted to manufacture her invention, and that it had engaged another company, Defendant Smith Lilly Health & Beauty Manufacturing Supply ("Smith Lilly"), sued herein as Smith Lilly Manufacturing, to license her invention.  (*Id.* ¶¶ 125–26.)

Brooks expressed her concern to Dombrowski that she was still under contract with Invents.  (*Id.* ¶ 128.)  Dombrowski employed "high pressure tactics," telling Brooks that she was confused and needed to sign another contract with Global Express.  (*Id.* ¶ 129.)  Dombrowski further stated that Brooks needed to pay an additional $5,000.00 to move forward with Smith Lilly.  (*Id.*)  Dombrowski sent Brooks a purported contract on behalf of Smith Lilly, which

contained the name Ray Anderson on the signature line.  (*Id.* ¶ 130.)  Plaintiffs believe this is the same Ray Anderson who contacted Zanotti on behalf of Zambro.  (*Id.*)

Brooks ultimately declined to enter the contract with Smith Lilly after receiving unsatisfactory responses from Invents to her inquiries regarding Dombrowski's affiliation with Invents.  (*Id.* ¶¶ 132–133.)  Brooks has paid approximately $12,000.00 to Defendants for services that she was never provided.  (*Id.* ¶ 137.)

Plaintiffs allege that Defendants' conduct constituted deceptive business practices in violation of certain sections of the New York General Business Law ("GBL").  (*Id.* ¶¶ 249–260.) They further allege that such conduct gives rise to common law claims sounding in fraud, negligent misrepresentation, breach of contract, breach of the duty of good faith and fair dealing, and unjust enrichment.  (*Id.* ¶¶ 271–314.)  Plaintiffs separately state a claim for breach of fiduciary duty only against Defendants Intromark, Najafi, RG Patent Consulting, Rachel Gilboy, Thomas Frost, P.A., Thomas Frost, Kaufhold & Dix, Ruth Eure, Patents for People, Crossley & Stevenson, and Kyle A. Fletcher.[3]  (*Id.* ¶¶ 315–320.)  Finally, Plaintiffs allege that Defendants failed to make proper disclosures to Plaintiffs prior to entering contracts for invention promotion services and made material and fraudulent statements in violation of the AIPA, and that Defendants used prohibited and harassing tactics to collect debts from Plaintiffs in violation of the TCPA.  (*Id.* ¶¶ 321–336.)

Plaintiffs purport to bring the foregoing claims on behalf of themselves and a class comprised of all persons and entities in the United States who purchased goods or services from Defendants.  (*Id.* ¶ 234.)  Plaintiffs further propose two subclasses of individuals defined as (1) all persons and entities who purchased goods or services from the InventHelp Defendants and

---

[3] Plaintiffs have withdrawn their claims against Thomas Frost, P.A., Thomas Frost, Kaufhold & Dix, Ruth Eure, Patents for People, Law Office of Kyle A. Fletcher and Kyle A. Fletcher.  (ECF Nos. 92 & 100.)

Defendants Abrams Gentile Entertainment LLC, Abrams Gentile Entertainment, Inc., Thomas

Frost P.A., Crossley & Stevenson, Law Office of Kyle A. Fletcher, and/or Kaufield & Dix and

(2) all persons and entities who purchased goods or services from Invents, Innovation Credit,

Global Express, Smith Lilly, Zambro, Najafi, RG Patent Consulting, Rachel Gilboy, Ruth Eure,

and/or Patents for People.  (*Id.* ¶ 235.)

## LEGAL STANDARDS

### I.    28 U.S.C. § 1447(c)

A "civil action" initially filed in state court may be removed by the defendant to the

federal district court embracing the place where the state court action is pending, so long as the

district court has original subject matter jurisdiction over the plaintiff's claim.  *See* 28 U.S.C. §

1441; *Lupo v. Human Affairs Int l, Inc.*, 28 F.3d 269, 271 (2d Cir. 1994).  The removal

jurisdiction of the federal courts is limited and should be "scrupulously confine[d]."  *Shamrock*

*Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941) (quotations omitted); *Noel v. J.P. Morgan*

*Chase Bank N.A.*, 918 F. Supp. 2d 123, 125 (E.D.N.Y. 2013).  "Removal jurisdiction must be

strictly construed, both because the federal courts are courts of limited jurisdiction and because

removal of a case implicates significant federalism concerns."  *James v. Gardner*, No. 04 Civ.

1380, 2004 WL 2624004, at *1 (E.D.N.Y. Nov. 10, 2004) (citing *In re NASDAQ Market Makers*

*Antitrust Litig.*, 929 F. Supp. 174, 178 (S.D.N.Y. 1996)).  However, regardless of any

presumption favoring or disfavoring removal where a party seeks to remove a case based on

traditional diversity jurisdiction, the Supreme Court has noted that there is no "antiremoval

presumption" in cases invoking CAFA, "which Congress enacted to facilitate adjudication of

certain class actions in federal court."  *Dart Cherokee Basin Operating Co., LLC, v. Owens*, 574

U.S. 81, 89 (2014).

In cases of removal, the removing party bears the burden of establishing that all jurisdictional requirements have been met. *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000); *see also United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). This remains true in cases invoking CAFA. *See Blockbuster v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006) ("CAFA did not change the traditional rule and [removing] defendant bears the burden of establishing federal subject matter jurisdiction"). Where subject matter jurisdiction is found lacking at any time before the entry of final judgment, "the Court is obligated to decline removal and remand [the] case." *Newman & Cahn, LLP. v. Sharp*, 388 F. Supp. 2d 115, 117 (E.D.N.Y. 2005); *see also* 28 U.S.C. § 1447(c); *United Food & Commercial Workers Union, Local 919*, 30 F.3d at 301.

## II.     Rule 12(b)(1)[4]

A challenge to a federal court's subject matter jurisdiction is properly raised by way of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). *All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 87–88 (2d Cir. 2006). Without jurisdiction, the Court lacks the "power to adjudicate the merits of the case." *Carter v. HealthPort Tech., LLC*, 822 F.3d 47, 55 (2d Cir. 2016). It is well-settled that the party invoking the Court's jurisdiction "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002)). A plaintiff's lack of standing is grounds for dismissal under Rule 12(b)(1). *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 560

---

[4] Although none of the moving Defendants purport to move pursuant to this provision, Rule 12(b)(1) is implicated by InventHelp Defendants' challenges to Plaintiffs' Article III standing. Thus, the following standards are applicable.

(S.D.N.Y. 2016).

### III.    Rule 12(b)(2)

A court must dismiss an action against any defendant over whom it lacks personal

jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2).  On a Rule 12(b)(2) motion to dismiss, the plaintiff

bears the burden of establishing, by a preponderance of the evidence, that the court has

jurisdiction over the defendant.  *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig*.,

399 F. Supp. 2d 325, 330 (S.D.N.Y. 2005).  "Where, as here, a court relies on pleadings and

affidavits, rather than a full-blown evidentiary hearing, the plaintiff need only make a *prima*

*facie* showing that the court possesses personal jurisdiction over the defendant."  *Id*. (quoting

*Distefano v. Carozzi N. Am., Inc*., 286 F.3d 81, 84 (2d Cir. 2001)).  In ruling on a 12(b)(2)

motion, a court may consider materials outside the pleadings, including affidavits and other

written materials.  *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012); *Bensusan Rest.*

*Corp. v. King*, 937 F. Supp. 295, 298 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 25 (2d Cir. 1997).  The

court assumes the verity of the allegations "to the extent they are uncontroverted by the

defendant's affidavits."  *MacDermid, Inc.*, 702 F.3d at 727 (internal quotations omitted).

Nonetheless, all factual doubts and disputes are resolved in the plaintiff's favor.  *See A.I. Trad*

*Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993).

### IV.    Rule 12(b)(6)

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual

matter, accepted as true, to "state a claim to relief that is plausible on its face.'"  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007));

*accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  "While legal conclusions can

provide the framework of a complaint, they must be supported by factual allegations."  *Id*. at

679.  To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense."  *Id*. at 662.  A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 678.

## DISCUSSION

### I.     Plaintiff's Motion to Remand and InventHelp's Motion to Dismiss

Defendant Intromark, one of the InventHelp Defendants, filed a Notice of Removal in this action on July 2, 2018.  (ECF No. 4.)  Intromark contended that removal was appropriate pursuant to CAFA.  (Notice of Removal ¶ 10.)  CAFA significantly expands federal diversity jurisdiction over most class actions.  Specifically, CAFA provides that a federal court may exercise diversity jurisdiction over any class action where (1) the amount in controversy, representing the aggregate sum of each individual plaintiff's claims, is $5 million or greater and (2) at least one plaintiff is diverse from at least one defendant.  28 U.S.C. § 1332(d)(2), (6).

No party disputes that, at the time the Notice of Removal was filed, this case met the standards required for the exercise of CAFA diversity jurisdiction.  However, InventHelp Defendants now contend, by means of their motion to dismiss or transfer venue, that neither of

the remaining named Plaintiffs satisfies the constitutional limitations derived from Article III of the United States Constitution.  (InventHelp Defs.' Mem. in Support of Mot. to Dismiss or Transfer Venue ("InventHelp Defs. MTD") (ECF No. 137) at 4.)  In particular, InventHelp Defendants state that Plaintiffs Zanotti and Brooks lack Article III standing insofar as they fail to allege an injury fairly traceable to InventHelp Defendants' conduct.  (*Id.* at 5–6.)

The Court notes that at the time of service of InventHelp Defendants' initial moving papers, former Plaintiff Sherry Porter remained a party to this action.  InventHelp Defendants argued in those papers that Porter, the only Plaintiff alleged to have had a contractual relationship with any of InventHelp Defendants, lacked standing to sue because her claims were not ripe for adjudication by this Court.  (*Id.* at 7–8.)  On March 21, 2019, Porter voluntarily discontinued her claims against all Defendants.  (ECF No. 118.)  Thereafter, Plaintiffs moved to remand this case to state court.  (ECF No. 127.)

For the reasons discussed below, the Court finds that it lacks subject matter jurisdiction over each of Plaintiffs' claims against InventHelp Defendants.  Nonetheless, a finding that the Court lacks subject matter jurisdiction over some, but not all, claims in an action does not compel remand of the entire action.  Accordingly, noting that Plaintiffs have consistently argued in favor of remand of the entire action, the Court denies Plaintiffs such relief and instead dismisses their claims against InventHelp Defendants without prejudice and with leave to re-plead.

a.  **Article III Standing**

The Supreme Court has called the doctrine of standing "perhaps the most important" of the case-or-controversy doctrines placing limits on federal judicial power as it derives directly from the Constitution.  *Allen v. Wright*, 468 U.S. 737, 750 (1984).  The doctrine requires a

plaintiff to have a "personal stake," in the outcome of the action.  *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009).  That is, a plaintiff must allege a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  *Allen*, 468 U.S. at 751.

"[T]he ' irreducible constitutional minimum' of standing consists of three elements[:] [t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992), and citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).  The party seeking to invoke federal jurisdiction has the burden of establishing each element.  *See Spokeo*, 136 S. Ct. at 1547; *Ali v. N.Y. City Envtl. Control Bd.*, No. 14 Civ. 00312, 2015 WL 728163, at *3 (E.D.N.Y. Nov. 16, 2015).

"[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete and particularized.'"  *Spokeo*, 136 S. Ct. at 1545 (quoting *Friends of the Earth*, 528 U.S. at 180–81).  Concreteness refers to the "realness" of the injury, meaning that the injury "must actually exist" and cannot be "abstract."  *Id.* at 1548.  The particularity requirement means that an injury "must affect the plaintiff in a personal and individual way."  *Id.*

The traceability requirement for Article III standing means that the plaintiff must "demonstrate a causal nexus between the defendant's conduct and the injury."  *Heldman v. Sobol*, 962 F.2d 148, 156 (2d Cir. 1992).  "Such a nexus is most easily shown if there is a direct relationship between the plaintiff and the defendant with respect to the conduct at issue."  *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013).  However, the indirectness of an injury is "not necessarily fatal to standing," although it "may make it substantially more difficult" to show

traceability.  *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 44–45 (1976).  The

traceability standard is lower than that of proximate cause.  *Rothstein*, 708 F.3d at 91.

As the party invoking federal jurisdiction, Defendant Intromark is required to establish

that all elements of jurisdiction, including Article III standing, exist.  *See Lujan*, 504 U.S. at 561

(1992) ("The party invoking federal jurisdiction bears the burden of establishing" Article III

standing).  InventHelp Defendants contend that Intromark established jurisdiction by properly

invoking CAFA.  (InventHelp Defs.' Mem. in Opposition to Pls.' Mot. to Remand ("InventHelp

Defs. Opp.") (ECF No. 130) at 4–5.)  InventHelp Defendants further reason that Plaintiffs'

addition of federal claims post-removal and their alleged filing of a "copy-cat class action" in the

Western District of Pennsylvania render remand "contrary to CAFA."  (*Id.* at 5.)  But reliance on

the requirements for jurisdiction under CAFA is not enough.  It is well-settled that federal courts

have subject matter jurisdiction only if constitutional standing requirements are also satisfied.

*See Spokeo*, 136 S.Ct. at 1547–48 (plaintiff lacks standing, and court lacks jurisdiction, without

"concrete and particularized" invasion of legally protected interest that is "actual or imminent");

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–101 (1998) (where a court's subject

matter jurisdiction is in doubt, a court must resolve that question first and proceed to the merits

of a case only if jurisdiction is established).

Thus, in order to establish jurisdiction, Intromark must show by a preponderance of the

evidence that Plaintiffs have Article III standing.  *See Selvarajah v. U.S. Dep't of Homeland

Sec.*, No. 10 Civ. 4580, 2010 WL 4861347, at *1 (S.D.N.Y. Nov. 30, 2010).  Instead, InventHelp

Defendants have moved to dismiss this action based on Plaintiffs' alleged lack of standing.

InventHelp Defendants cannot rely on CAFA to justify the court's continued exercise of

jurisdiction over the claims against them while simultaneously arguing that the court must

dismiss those same claims for lack of subject matter jurisdiction.  *See Collier v. SP Plus Corporation*, 889 F.3d 894, 896 (7th Cir. 2018) (rejecting argument that "once removal based on a federal question gets a defendant's foot in the door of a federal court, the slate is wiped clean and the defendant can challenge jurisdiction"); *Barnes v. ARYZTA, LLC*, 288 F. Supp. 3d 834, 839 (N.D. Ill. 2017) (noting, in context of CAFA case removed from state court where removing party later challenged Article III standing, that "[t]o say that a court is without jurisdiction to decide a case on its merits [yet] has jurisdiction merely to remove the case is to state a contradiction." (internal quotation marks omitted) (citation omitted)).

Plaintiffs contend that InventHelp Defendants' abdication of their burden to demonstrate jurisdiction mandates remand without further inquiry.  (*See* Pls.' Mem. in Support of Mot. to Remand ("Pls. Mot.") (ECF No. 128) at 2 ("InventHelp Defendants have *ipso facto* renounced their claim of subject matter jurisdiction by virtue of their motion to dismiss for lack of Article III standing, and remand is mandatory.").)  Plaintiffs neither concede that they lack standing nor present a cogent argument that standing exists.  (*See* Pls.' Opp. to InventHelp Defs. MTD ("Pls. Opp. to InventHelp MTD") (ECF No. 141) at 5–6 (arguing that InventHelp Defendants' position on standing compels remand, but in the alternative that the Amended Complaint adequately pleads standing, without further elaboration).)  Conversely, InventHelp Defendants state that this Court has an independent obligation to assess Plaintiffs' standing with respect to every claim alleged, regardless of InventHelp Defendants' own challenge to the Court's jurisdiction. (InventHelp Defs. Opp. at 11.)

While it is not this Court's responsibility to divine all arguments that could have been made by the parties, it is true that district courts have an independent obligation to consider the presence or absence of subject matter jurisdiction.  *See Joseph v. Leavitt*, 465 F.3d 87, 89 (2d

Cir. 2006). However, there is persuasive authority in this Circuit and elsewhere that where no party shoulders the burden of proving jurisdiction in a case removed from state court, remand is the appropriate remedy without further analysis. *See Black v. Main Street Acquisition Corp.*, 11 Civ. 577, 2013 WL 1295854, at *1 (N.D.N.Y. March 27, 2013) (remanding *sua sponte* where defendant removed and then moved to dismiss for lack of subject matter jurisdiction, which plaintiff conceded did not exist); *Ayala v. Sixt Rent a Car, LLC*, No. Civ. 191514, 2019 WL 2914063, at *2 (C.D. Cal. July 8, 2019) (because parties were aligned in view that court lacked subject matter jurisdiction, remand of CAFA-removed case was warranted); *Mocek v. Allsaints USA Ltd.*, 220 F. Supp. 3d 910, 914 (N.D. Ill. 2016) (granting plaintiff's motion to remand because "with no party willing to overcome the presumption against federal jurisdiction, remand is appropriate on any analysis").

That being said, Article III standing is not waiveable. "[A] federal court cannot simply accept a stipulation of the parties regarding subject matter jurisdiction–whether it be that jurisdiction does or does not exist–without rendering an affirmative finding on that issue." *Katz v. Six Flags Great Adventure, LLC*, No. Civ. 18116, 2018 WL 3831337, at *5 (D.N.J. Aug. 13, 2018) (citing *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 851 (1986) ("When … Article III limitations are at issue, notions of consent and waiver cannot be dispositive because the limitations serve institutional interests that the parties cannot be expected to protect.")). Moreover, the cases cited above may have been less problematic because both parties conceded that jurisdiction did not exist. Plaintiffs in this matter do not go as far. Accordingly, it is appropriate that the Court conduct an independent review of its subject matter jurisdiction over Plaintiffs' claims against InventHelp Defendants.

Upon review of the Amended Complaint, the Court agrees that Plaintiffs have not

adequately pleaded an injury-in-fact that is fairly traceable to the challenged conduct of

InventHelp Defendants.  Plaintiffs' only factual allegation with regard to any of the InventHelp

Defendants is that each of them contacted an InventHelp representative after seeing InventHelp's

advertisements on television, gave the representative their contact information, and later received

a call from Defendant Invents Company.  Plaintiffs admit that they had no contractual or

business relationship with any of InventHelp Defendants.  In addition, they do not provide a

factual basis for assuming a business relationship between any of InventHelp Defendants and the

Defendants with whom they did have a contractual relationship.  Plaintiffs merely state that

"upon information and belief," Invents and InventHelp are "identical," and they, together with

the rest of Defendants, "operate in concert," "purposefully arranged in a shell corporate structure

and with differing corporate and company names in order to perpetrate the scheme and evade

liability and collection of damages."  (*Id.* ¶ 31.)

Plaintiffs' broad allegations of conspiracy with no factual underpinning are nothing more

than conclusory assertions that cannot give rise to Article III standing.  While Plaintiffs are not

required to demonstrate the InventHelp Defendants were a proximate cause of their injuries, they

must establish a "line of causation" between InventHelp Defendants' action and their alleged

harm that is more than "attenuated."  *Allen v. Wright*, 468 U.S. 737, 757 (1984), *abrogated on

other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

Here, the line of causation is bound exclusively by hypothetical, conclusory, and implausible

assertions of a "grand scheme."  This causal chain is too weak to support standing at the pleading

stage.  *See Citizens for Responsibility & Ethics in Washington v. Trump*, 953 F.3d 178, 191 (2d

Cir. 2019), as amended (Mar. 20, 2020) ("To satisfy the 'traceability' or 'causation' prong of the

Article III standing test, allegations must provide more than 'unadorned speculation' to 'connect

their injury to the challenged actions.'") (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 44–45 (1976)); *Ramos v. Patrician Equities Corp.*, 765 F. Supp. 1196, 1199–200 (S.D.N.Y. 1991) (plaintiff cannot avoid effect of standing doctrine by alleging that all defendants were in a conspiracy and therefore a business relationship with one means that all can be sued); *see also Nat'l Audubon Soc., Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002) (while a causation chain for purposes of Article III standing does not fail simply because it has several links, those links cannot be "hypothetical or tenuous" and must "remain plausible") (citing with approval *Autolog Corp. v. Regan*, 731 F.2d 25, 31 (D.C. Cir. 1984) ("What matters is not the 'length of the chain of causation,' but rather the 'plausibility of the links that comprise the chain.'")).

Further, absent any non-conclusory facts that would allow the Court to infer a relationship between Invents and InventHelp, Plaintiffs' injuries, which arose from their business interactions and contractual relationships with Invents and other Defendants, are not fairly traceable to the single phone calls Plaintiffs made to InventHelp.  For example, it is not plausible that InventHelp's act of speaking with Plaintiffs and recording their contact information bears a genuine nexus to the injuries Plaintiffs suffered because Invents made misleading statements and breached a contract to which InventHelp was not a party.  Nor can it reasonably be argued that InventHelp's actions were a cause of the damages Plaintiffs incurred because their attorneys failed to advise them that their proposed inventions were unsuitable for utility patents.  *See Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 162 (4th Cir. 2000) (traceability requirement "is in large part designed to ensure that the injury complained of is 'not the result of the independent action of some third party not before the court'" (quoting *Lujan*, 504 U.S. at 560)).

InventHelp Defendants state that, whatever the Court's conclusion as to Plaintiffs' state law claims, the Court maintains "original subject matter jurisdiction" over Plaintiffs' claims under the AIPA and the TCPA.  (InventHelp Defs. Opp. at 8.)  InventHelp Defendants then attempt to walk back their standing argument as to those claims, noting that Plaintiffs' lack of "any contractual or business relationship" with InventHelp Defendants "will not necessarily strip Plaintiffs of their standing with respect to the entirety of these newly added federal claims."  (*Id.* at 9.)  For example, InventHelp Defendants argue, "the existence of a contract is not required under the [TCPA]."[5]  (*Id.*)

Notwithstanding the business nature of the relationship between Plaintiffs and Defendants, the requirement of an injury-in-fact fairly traceable to Defendants remains with respect to Plaintiffs' federal claims because it is a necessary component of Article III standing. The injuries Plaintiffs claim to have suffered as a result of Defendants' breaches of the AIPA and TCPA are based entirely on a chain of events that started with Plaintiffs' meeting with Invents. It is too tenuous an argument to make that Plaintiffs' one-off phone calls to InventHelp, an apparently unrelated entity, were causally connected to Invents' subsequent misrepresentations

---

[5] InventHelp Defendants appear to confuse Article III standing with statutory standing.  The requirement of an injury-in-fact fairly traceable to InventHelp Defendants remains with respect to Plaintiffs' federal claims because it is a necessary component of Article III standing.  The requirement of a contractual relationship in order to allege a statutory violation, conversely, goes to whether Plaintiffs have statutory standing to sue.  This difference is significant because it bears on how the Court may dispose of a claim where standing is lacking.  If a court dismisses a claim for lack of Article III standing, dismissal is for lack of subject matter jurisdiction and generally must be without prejudice.  *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017).  Conversely, dismissal for lack of statutory standing is typically considered a dismissal for failure to state claim under Federal Rule of Civil Procedure 12(b)(6).  *See, e.g.*, *In re Century Aluminum Co. Securities Litigation*, 729 F.3d 1104, 1109 (9th Cir. 2013); *CGM, LLC v. BellSouth Telecommunications, Inc.*, 664 F.3d 46, 51–53 (4th Cir. 2011).

The Second Circuit instructs that courts may adjudicate statutory standing prior to Article III issues only where deciding statutory standing does not constitute a "definitive ruling on the merits."  *Alliance For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 87 (2d Cir. 2006).  Here, determining whether Plaintiffs met the prerequisites for suing under the AIPA and TCPA goes to the merits and must follow the Court's analysis of Article III standing.  Moreover, the Article III issue presented is fairly straightforward, such that there are no other extenuating circumstances that would warrant treatment of the statutory issue first.  *See In re Facebook, Inc. Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 155–56 (2d Cir. 2015) (explaining when it might be appropriate to address issues of statutory standing before Article III standing).

and the numerous debt collection calls Plaintiffs allegedly received from other Defendants later on.

Moreover, as the Court has already explained, Article III standing is a necessary, non-waiveable prerequisite to subject matter jurisdiction.  In the absence of standing, it is irrelevant that the Court generally has federal question jurisdiction over AIPA and TCPA claims.  The Court notes that even if it did have proper subject matter jurisdiction over Plaintiffs' federal claims, standing would remain a requirement for the exercise of jurisdiction over Plaintiffs' remaining claims.  InventHelp Defendants' assertion that the Court could simply "exercise supplemental jurisdiction over Plaintiffs' remaining common-law state claims and dismiss them (even if the Court finds that they lack standing with regard to these claims)," (*id.* at 9), is patently false.  Supplemental jurisdiction is not a magic wand that can waved to cure defects in Article III standing.  Its exercise is only appropriate where all elements of subject matter jurisdiction, including standing, have been satisfied.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351–52 (2006) ("What we have never done is ... permit a federal court to exercise supplemental jurisdiction over a claim that does not itself satisfy those elements of the Article III inquiry, such as constitutional standing ....").

Simply put, Plaintiffs' bare allegations of conspiracy do not suffice to render any of the harms Plaintiffs suffered fairly traceable to InventHelp or any of the InventHelp Defendants.  Accordingly, Plaintiffs lack standing to sue InventHelp Defendants in federal court.

### b.  Remand

28 U.S.C. § 1447(c) states that the district court *shall* remand the case to state court if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction."  There are two possible limitations to this principle.

First, remand might be improper if it would be futile, as it would be if, for example, the state court could not exercise jurisdiction over the remanded claims.  *See Mignogna v. Sair Aviation, Inc.*, 937 F.2d 37, 41 (2d Cir. 1991).  Under the futility exception, a district court may decide not to remand a case where "anticipated barriers to suit in state court [are] sufficiently certain to render a remand futile."  *Int'l Primate Protection League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 88 (1991).  The Second Circuit has not expressly endorsed a district court's invocation of the futility doctrine to dismiss a case instead of remanding it.  In *Mignogna v. Sair Aviation, Inc.*, the Court indicated an openness to the futility doctrine, stating that "in order to avoid any potential futility exception to the explicit remand direction of 28 U.S.C. § 1447(c) (1988), we need only conclude that it is not certain that [the relevant statute] would bar state court jurisdiction in the event of a remand."  *Mignona*, 937 F.2d at 43.  However, the Court has suggested more recently that a futility exception may never be appropriate, stating, "[a]lthough we have indicated that we might be willing to entertain the futility exception, it should be noted that the Supreme Court, in commenting upon the possibility of such an exception, took 'note ... of the literal words of § 1447(c), which, on their face, give ... no discretion to dismiss rather than remand an action.'"  *Barbara v. New York Stock Exchange, Inc.*, 99 F.3d 49, 56 n. 4 (2d Cir.1996) (quoting *International Primate,* 500 U.S. at 89 (citations omitted))

The Court need not rule on the viability of the futility exception at this juncture because none of InventHelp Defendants' arguments would support its application.  InventHelp Defendants contend that remand would be futile because the state court would be constrained to dismiss Plaintiffs' claims on the merits for the reasons they proffer in their motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (InventHelp Defs. Opp. at 6.)  InventHelp

Defendants also argue that remand would be futile because Plaintiffs will, "by necessity, expand this case post-remand by adding a new named plaintiff back into the action in order to represent the purported subclass of Plaintiffs who have directly contracted with InventHelp." (*Id.* at 7.)

Neither of these arguments provide a sound basis to deny remand. The first is an attempt to have this Court issue rulings on the merits of Plaintiffs' claims, even after the Court has found that it lacks subject matter jurisdiction to do so. Any such rulings would plainly be improper. In any event, the fact that a plaintiff may be unlikely to persuade a state court that he or she has stated a claim is not a sufficient ground for denying remand. *See Maine Ass'n of Interdependent Neighborhoods v. Commissioner, Maine Dep't of Human Servs.*, 876 F.2d 1051, 1055 (1st Cir. 1989) (cited with approval in *International Primate* and *Mignogna* ) ("the fact that we believe a certain legal result unlikely, as a matter of state law, is not sufficient ground for reading an exception into the absolute statutory words [of § 1447(c)] 'shall be remanded'").

The second argument rests on InventHelp Defendants' own speculation as to what Plaintiffs will do upon remand to state court. Such speculation clearly cannot constitute an anticipated barrier to suit in state court that is "sufficiently certain" to render remand futile.

It is further worth noting that InventHelp Defendants' purported concern about Plaintiffs' "endless gamesmanship before this Court" and their fear of "expensive discovery" in state court, (InventHelp Defs. Opp. at 1), are at odds with their position that Plaintiffs' claims are certain to fail in state court. Indeed, if InventHelp Defendants were truly concerned about expense and the preservation of judicial resources, their litigation strategy would not have involved invoking this Court's jurisdiction only to immediately challenge it on standing grounds. (*See* InventHelp Defs.' Pre-Motion Letter Dated July 6, 2018 (ECF No. 8) (seeking dismissal for lack of Article III standing approximately four days after properly filing Notice of Removal).) *See also Collier*,

889 F.3d at 897 (defendant's "dubious strategy" of removing based on federal question jurisdiction and immediately moving to dismiss for lack of standing "has resulted in a significant waste of federal judicial resources, much of which was avoidable").

The second possible limitation on remand concerns a situation where the court retains jurisdiction over some claims in an action.  Pursuant to the Supreme Court's ruling in *Wisconsin Dep't of Corrections v. Schacht*, § 1447(c) does not compel remand of an entire action where the district court finds that it lacks subject matter jurisdiction over only some claims.  524 U.S. 381, 392 (1998).   In *Schacht*, the plaintiff contended that if the "district court lacks subject matter jurisdiction over *any* claim, then *every* claim, *i.e.,* the entire case, must be remanded to the state court.  *Id.* at 391 (internal quotation marks omitted).  The Supreme Court rejected the plaintiff's argument, finding that there were only two conceivable readings of § 1447(c).  *Id.*  First, the language of the statute could be read as referring only to "an instance in which a federal court 'lacks subject matter jurisdiction' over a 'case,' and not simply over one claim within a case." *Id.*  Alternatively, "one might also read the statute's reference to 'case' to include a claim within a case as well as the entire case." *Id.*  While the Supreme Court did not endorse one reading over the other, it noted that even if the second were adopted, the statute compels courts to remand only relevant claims, and not the entire case.  *Id.*

Taking a step back, it is well-settled that where "the federal court never could have exercised original jurisdiction over the case, remand is required …."  *Mignogna*, 937 F.2d at 40 (citing *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 18 (1951)).  Accordingly, several circuit courts confronted with the situation where, as here, a defendant removes a case from state court and then proceeds to challenge the plaintiff's Article III standing have found that § 1447(c) compels remand.  For example, in *Polo v. Innoventions International, LLC*, the defendant

removed pursuant to CAFA and later filed a motion for summary judgment arguing that the plaintiff lacked standing to sue in federal court. 833 F.3d 1193, 1194 (9th Cir. 2016). The district court agreed and dismissed the case. *Id.* On appeal, the Ninth Circuit held that upon determining that it lacked jurisdiction, the district court was required to remand the case to state court pursuant to § 1447(c). *Id.* at 1196 ("The rule that a removed case in which the plaintiff lacks Article III standing must be remanded to state court under § 1447(c) applies as well to a case removed pursuant to CAFA as to any other type of removed case."). In *Wallace v. Conagra Foods, Inc.*, the Eighth Circuit confronted a similar fact pattern and ruled that where it becomes clear that a case removed from state court does not belong in federal court because the plaintiffs lack Article III standing, "the federal court *must* remand the case to the state court from whence it came." 47 F.3d 1025, 1033 (8th Cir. 2014); *see also Collier*, 889 F.3d at 897 (remand statute required the district court to remand case to state court where it did not satisfy Article III's requirements); *Maine Ass'n of Interdependent Neighborhoods*, 876 F.2d at 1055, 1054 (§ 1447(c) gave district court no discretion to dismiss rather than remand an action after it found plaintiff lacked standing to sue in federal court).

Where a court finds that it lacks subject matter jurisdiction over only some, but not all, claims in a case removed from state court, the appropriate course of action is less straightforward. Most courts agree, in accordance with *Schacht*, that in these types of situations remand of the entire action is not warranted by § 1447(c). *See Am. Capital Acquisitions Partners LLC v. Fortigent LLC*, 595 Fed. App'x 113 (3d Cir. 2014) (applying *Schacht* and concluding that successful standing challenge to one claim did not warrant remand of other claims); *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1044 (D.C. Cir. 2010) (applying *Schacht* and holding that remand of an entire case to state court was not warranted where some, but not all, plaintiffs were

24

found to have lacked standing); *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1006 (9th Cir. 2001) (applying *Schacht* and rejecting the argument that because the district court lacked subject matter jurisdiction over one claim, the entire case must be remanded).

However, there is less guidance as to how a court should dispose of the standing-deficient claims.  The Second Circuit has yet to directly address this matter.  Several other circuit courts have declined to take up the issue, with some indicating that dismissal may be an appropriate substitute for remand.  In *Lee v. American National Insurance Company*, the Ninth Circuit rejected the argument that the entire case should be remanded because some, but not all, of the plaintiff's claims were standing-deficient. 260 F.3d at 1006.  The Ninth Circuit noted that those claims would "have to be disposed of in some manner on remand to the district court," either by dismissal by the court or voluntary dismissal by the plaintiff.  *Id.*  The court observed that "there should be no obstacle to [plaintiff's] refiling [the standing-deficient claims] in state court."  *Id.* However, the Court found that it "need not decide" whether the district court should remand the standing-deficient claims to state court because plaintiff's "consistent position on this appeal has been that his case must be remanded in its entirety," *id.* at 1007, and plaintiff failed to present a "specific, cogent argument [as to partial remand] for our consideration on appeal."  *Id.* (quotation marks and citation omitted).  Confronted with a similar fact pattern, the Third Circuit affirmed the district court's dismissal of a standing-deficient claim and considered the issue of partial remand waived in *American Capital Acquisitions Partners LLC v. Fortigent LLC* because no party had presented a compelling argument in favor of partial remand.  595 Fed. App'x at 117.  In *Shaw v. Marriott International*, the D.C. Circuit likewise refused to order remand of the entire case to state court where it retained jurisdiction over some claims.  605 F.3d at 1044.  It then remanded the claims of those plaintiffs who lacked standing to the district court "so that it

may determine the appropriate disposition." *Id.* On the other hand, the Eighth Circuit has held that where plaintiffs explicitly seek to remand only those claims that lack Article III standing, those claims should be remanded to state court. *See Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987, 993 (8th Cir. 2016).

Neither Plaintiffs nor InventHelp Defendants have addressed the issue of partial remand. Only InventHelp Defendants have even cited to *Schacht* for the proposition that remand is not mandated if the Court determines Plaintiffs have standing as to certain claims. (InventHelp Defs. Opp. at 11.) At minimum, it is clear after *Schacht* that the Court is not required to remand an entire case where the Court retains jurisdiction over some claims. Here, no party challenges the Court's continued subject matter jurisdiction under CAFA over Plaintiffs' claims against other Defendants in this action, including Invents.[6] The question is whether Plaintiffs' claims against InventHelp Defendants should be remanded or dismissed without prejudice.

Since no party has briefed the issue of partial remand, Plaintiffs have consistently sought remand of the entire action, and neither the Supreme Court nor the Second Circuit has expressly authorized partial remand under § 1447(c) in the face of proper CAFA jurisdiction, the Court is reluctant to construct a new doctrine on partial remand at present. The Court also notes that Plaintiffs have not presented any argument that they would be foreclosed from commencing a new action in state court against InventHelp Defendants if the Court were to dismiss their claims without prejudice rather than remand them. *Cf. Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 351–52 (1988) (finding the plaintiff's forfeiting of viable state-law claims a "potent reason" for allowing district courts to remand remaining state-law claims initially removed pursuant to the

---

[6] Plaintiffs have obtained certificates of default against Defendants Invents Company, Invents Company, LLC, Innovation Credit Corp., Smith Lilly Manufacturing, Abrams Gentile Entertainment, Inc., Global Express Manufacturing, and Zambro Manufacturing. (ECF Nos. 65, 66, 67, 68, 69, 114 & 115.)

district courts' supplemental jurisdiction).  Finally, directing Plaintiffs' claims against some Defendants to proceed in state court in parallel to this federal action, when all of the claims arise from the same alleged scheme and set of facts, would likely result in further waste of judicial resources and raise the possibility of inconsistent results.  It would also be "anathema to CAFA, which was 'designed primarily to curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate multi-state or even national class actions in state courts.'"  *Cabral v. Supple, LLC*, No. 12 Civ. 00085, 2016 WL 1180143, at *3 (C.D. Cal. Mar. 24, 2016) (quoting *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir. 2009)).

Accordingly, the Court denies Plaintiffs' motion to remand and grants InventHelp Defendants' motion to dismiss all claims against them for lack of subject matter jurisdiction. Since dismissal is for lack of subject matter jurisdiction rather than on the merits, it is necessarily without prejudice.  *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017). Moreover, since it is possible that the defects identified by the Court may be cured, the Court grants leave to re-plead.

## II.   Defendant Najafi's and RG Patent Defendants' Motions to Dismiss

Defendant Najafi and the RG Patent Defendants (together, "Attorney Defendants") make substantially similar arguments for dismissal of Plaintiffs' claims against them.  First, Attorney Defendants contend that this Court lacks personal jurisdiction over them.  Defendant Najafi is an attorney licensed and with a primary place of business in Florida.  (Am. Compl. ¶ 45.) Defendant RG Patent Consulting LLC is an organization with its principal place of business in Arizona.  (*Id.* ¶ 46.)  Defendant Gilboy is a citizen and resident of Arizona and the principal of RG Patent Consulting LLC.  (*Id.*)  Attorney Defendants argue that personal jurisdiction is improper because they did not purposely avail themselves of New York law or advertise their

services in New York.  (Najafi's Mem. in Support of Mot. to Dismiss ("Najafi MTD") (ECF No. 146) at 5; RG Patent Defendants' Mem. in Support of Mot. to Dismiss ("RG Patent MTD")[7] at 5.)  Attorney Defendants further contend that the Amended Complaint must be dismissed as against them because it fails to state claims upon which relief may be granted.  (Najafi MTD at 5–6; RG Patent MTD at 5–6.)

In their reply memoranda, Attorney Defendants raise a third ground for dismissal, arguing that venue is improper based on the existence of forum selection clauses in their contracts with Plaintiffs.  (Najafi's Mem. in Further Support of Mot. to Dismiss ("Najafi Reply") (ECF No. 148) at 1–2; RG Patent Defendants' Mem. in Further Support of Mot. to Dismiss ("RG Patent Defs. Reply") (ECF No. 152) at 1–2.)  While Attorney Defendants state that they "properly brought [their] forum-selection clause issue before the court pursuant to FRCP 12(b)(6)," (Najafi Reply at 1–2; RG Patent Defs. Reply at 1–2), a review of both notices of motion and the movants' initial memoranda reveals that they mentioned the existence of the clauses in passing a single time in the context of their personal jurisdiction arguments.  Attorney Defendants also use their replies to make an alternative argument for transfer under the doctrine of *forum non conveniens*.  (Najafi Reply at 4; RG Patent Defs. Reply at 4.)  The Court declines to undertake a review of issues that Attorney Defendants made no attempt to properly brief until their replies became due.  The Court notes that Attorney Defendants explicitly moved to dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  (*See* ECF Nos. 145 & 149.) Transfer due to improper venue is not authorized under either of those provisions.

As to the arguments that are properly raised by Attorney Defendants, for the reasons

---

[7] RG Patent Defendants have not e-filed their memorandum in support of their motion.  Although the memorandum is listed at ECF No. 150, a review of the submission reveals that it is in fact Plaintiffs' memorandum in opposition to InventHelp Defendants' motion that was filed under this entry.  The Court therefore relies on a memorandum received by Chambers on April 2, 2019.

provided below, the Court finds that it may not exercise personal jurisdiction over any of

Attorney Defendants.  The Amended Complaint is therefore dismissed against Attorney

Defendants without prejudice and with leave to re-plead.

### a.  Personal Jurisdiction

To determine whether personal jurisdiction exists over Attorney Defendants,

the Court must look first to New York's long-arm statute.  *See Chloé v. Queen Bee of Beverly*

*Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010); *see also Marvel Characters, Inc. v. Kirby*, 726

F.3d 119, 129 (2d Cir. 2013).  If, but only if," *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242

(2d Cir. 2007), the court finds that the New York long-arm statute confers jurisdiction,

the court then turns to whether the exercise of jurisdiction comports with the due process

requirements of the Fourteenth Amendment.  *See Int'l Shoe Co. v. Washington*, 326 U.S. 310

(1945).

### i.  New York's Long Arm Statute

N.Y. C.P.L.R. § 302(a) ("C.P.L.R. § 302(a)"), in relevant part, confers jurisdiction as

follows: "[A] court may exercise personal jurisdiction over any non-domiciliary, or his executor

or administrator, who in person or through an agent … commits a tortious act without the state

causing injury to person or property within the state[.]"  N.Y. C.P.L.R. § 302(a)(3).  If the

alleged tortious act occurred outside of New York but caused injury inside New York as in this

case, then there are additional prerequisites to asserting jurisdiction over the foreign defendant.

The defendant must either a) "regularly do[ ] or solicit[ ] business" in New York, b) "engage[ ]

in any other persistent course of conduct" in New York, c) "derive[ ] substantial revenue from

goods used or consumed or services rendered" in New York, or d) "derive[ ] substantial revenue

from interstate or international commerce" and "expect[ ] or should reasonably expect the act

[occurring outside New York] to have consequences" in New York.  N.Y. C.P.L.R. § 302(a)(3).

The New York Court of Appeals has laid out five conditions that must be met to obtain personal jurisdiction pursuant to C.P.L.R. § 302(a)(3)(ii), the only provision Plaintiffs invoke in support of jurisdiction: "(1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce."  *Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 302 (2011).  The limitations on jurisdiction imposed by C.P.L.R. § 302(a)(3) are "more stringent than any constitutional requirement," *Ingraham v. Carroll*, 90 N.Y.2d 592, 597 (1997), and require a showing of contacts somewhere between the large quantity required for general jurisdiction under N.Y. C.P.L.R. § 301 and the "one shot" single business transaction that can satisfy § 302(a)(1).  *Id.*

Attorney Defendants do not address C.P.L.R. § 302(a) in detail in their moving papers, simply arguing that it does not support jurisdiction in this case.  Plaintiffs, on the other hand, contend that the Amended Complaint satisfies each of the five conditions required to exercise personal jurisdiction over an out-of-state defendant in New York.  (Pls.' Mem. In Opp. to Mots. to Dismiss of Najafi and RG Patent Defendants ("Pls. Opp. to Attorney Defs. MTD") (ECF Nos. 153 & 154) at 5–7.)  The Court addresses these arguments below.

Jurisdiction under C.P.L.R. § 302(a)(3)(ii) arises only where the underlying claim involves tortious conduct.  *See Heinfling v. Colapinto*, 946 F. Supp. 260, 264 (S.D.N.Y. 1996) ("Section 302 does not confer general jurisdiction; rather, the cause of action must arise from the tortious act that is the basis of the claim.").  "New York courts routinely hold that a breach of

contract claim does not constitute a tortious act and may not form the basis of long-arm jurisdiction pursuant to section 302(a)(3)." *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 332 (S.D.N.Y. 2015). Although Plaintiffs allege breach of contract and a number of other claims that may not constitute torts for purposes of C.P.L.R. § 302(a)(3)(ii), they also assert several causes of action against Attorney Defendants that do sound in tort. Specifically, Plaintiffs allege that Attorney Defendants were aware that their proposed inventions were not legally suitable for a utility patent, and that many of their clients had complained to them that Invents behaved fraudulently. (Am. Compl. ¶ 95.) Plaintiffs contend that Attorney Defendants' failure to disclose this information to them was, among other things, a breach of their fiduciary duties towards Plaintiffs as clients. (*Id.* ¶ 318.) Thus, Plaintiffs plead tortious conduct outside of New York and claims arising from such conduct, in satisfaction of the first and second conditions laid out by the New York Court of Appeals.

As to the third condition, Plaintiffs, New York residents, allege injury insofar as they agreed to pay and/or paid Attorney Defendants for services they represented they could provide, when they knew they could not. (*Id.* ¶¶ 93–95, 119–121.) Plaintiffs could be clearer in the Amended Complaint about whether and how much Plaintiff Zanotti actually paid Defendant Najafi. Nonetheless, viewing the allegations in the light most favorable to Plaintiffs, and noting Plaintiffs' repeated contentions in their opposition papers that Attorney Defendants "took their money," (Pls. Opp. to Attorney Defs. MTD at 2), the Court finds that Plaintiffs have alleged economic injury occurring in New York.

With respect to the fourth condition, courts have emphasized that "'[t]he test of whether a defendant expects or should reasonably expect his act to have consequences within the State is an objective rather than a subjective one.'" *Cortlandt Racquet Club, Inc. v. Oy Saunatec,*

*Ltd.*, 978 F. Supp. 520, 523 (S.D.N.Y. 1997) (quoting *Allen v. Auto Specialties Mfg. Co.*, 357 N.Y.S.2d 547, 550 (App. Div. 1974)).  Moreover, the "mere foreseeability of in-state consequence and failure to avert that consequence is not sufficient to establish personal jurisdiction under New York's long-arm statute."  *Id.*  Instead, because "New York courts have sought to avoid conflict with federal constitutional due process limits on state court jurisdiction by applying the 'reasonable expectation' requirement in a manner consistent with United States Supreme Court precedent," *Kernan v. Kurz–Hastings, Inc.,* 175 F.3d 236, 241 (2d Cir. 1999), "foreseeability must be coupled with evidence of a purposeful New York affiliation," such as "a discernible effort to directly or indirectly serve the New York market," *Schaadt v. T.W. Kutter, Inc.*, 564 N.Y.S.2d 865, 866 (App. Div. 1991).  Accordingly, "purposeful availment of the benefits of the laws of New York such that the defendant may reasonably anticipate being haled into New York court is required" in order to exercise long-arm jurisdiction under Section 302(a)(3)(ii).  *Kernan*, 175 F.3d at 241.[8]

Plaintiffs have not pleaded that Attorney Defendants aimed any of their business or legal activities at consumers in New York.  Nor have they pleaded that Attorney Defendants purposefully availed themselves of the privilege of this state's laws, such that they should have expected to be haled into court within the state.  Plaintiffs were referred to Attorney Defendants

---

[8] It is unclear whether the foreseeability element of C.P.L.R. § 302(a)(3)(ii) continues to require a showing of purposeful availment.  In *LaMarca v. Pak–Mor Mfg. Co.,* 95 N.Y.2d 210, 215 (2000), the Court of Appeals omitted any discussion of purposeful availment in its analysis of personal jurisdiction under C.P.L.R. § 302(a)(3)(ii), leading the Second Circuit to question whether *Kernan* had effectively been overruled.  *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 n. 3 (2d Cir. 2002).  However, the *LaMarca* court based part of its finding of jurisdiction on the defendant's use of New York business contacts and its business activity directed specifically at New York, "suggest[ing] strongly that the Court of Appeals continues to consider purposeful availment an element of the interstate commerce analysis for long arm jurisdictional purposes."  *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02 Civ. 4695, 2003 WL 21467544, at *7 (S.D.N.Y. June 25, 2003).

In any event, since purposeful availment is necessary for an exercise of personal jurisdiction to comport with due process, the Court need not resolve this question.  *See Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 243 n. 4 (S.D.N.Y. 2010).

by Invents and presumably were the first to contact Attorney Defendants.  (Am. Compl. ¶¶ 91,

119.)  Their contracts with Plaintiffs included a forum-selection clause[9] agreeing that Florida and

Arizona courts, respectively, would have jurisdiction over contractual disputes.  (Najafi MTD

Ex. 101 ("Najafi Engagement Letter") at 7; *id.* Ex. 102 ("Najafi Representation Agreement") at

4; RG Patent Defs. MTD Ex. 201 ("RG Patent Representation and Fee Agreement") at 6.)

Attorney Defendants agreed to represent Plaintiffs for the purpose of filing a patent application

alone and not in any New York proceeding.  (Najafi Engagement Letter at 4; RG Patent

Representation and Fee Agreement at 1.)  Plaintiffs do not allege that Attorney Defendants ever

took actions in New York, had meetings there, or had other business dealings with clients in New

York.  These facts suggest that Attorney Defendants' legal practice was local in nature.  *See*

*Bissonnette v. Podlaski*, 138 F. Supp. 3d 616, 627–28 (S.D.N.Y. 2015) (out-of-state defendant

attorney who advised plaintiff on two discrete matters relating to a book that was to be published

through a New York publishing house, did not represent plaintiff in New York proceedings, did

not have other business in New York, and did not agree in contract with plaintiff to be subject to

New York laws did not purposefully avail himself of benefits New York's laws); *Vieira v.*

*Korda*, No. 17 Civ. 160, 2018 WL 2122825, at *12 (D. Vt. May 8, 2018) (applying federal due

process analysis, finding personal jurisdiction improper where out-of-state defendant attorney's

services were limited to preparing and filing an immigration petition).

Further, while Plaintiffs allege that Attorney Defendants received all or a substantial part

of their business through referrals from Invents or InventHelp and have had "hundreds" of clients

referred by those entities, (Am. Compl. ¶¶ 91, 95, 121), Plaintiffs do not claim that those

---

[9] On a motion pursuant to Federal Rule of Civil Procedure 12(b)(2), a court may consider materials outside the pleadings, including affidavits and other written materials.  *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012); *Bensusan Rest. Corp. v. King*, 937 F. Supp. 295, 298 (S.D.N.Y. 1996), *aff'd*, 126 F.3d 25 (2d Cir. 1997).

referrals resulted in a New York client base, or even that most of Invents and InventHelp's clients were from New York.  Even if Plaintiffs had done so, their claims would not suffice to show purposeful availment because they are all based upon mere "information and belief." "Conclusory allegations showing the presence of jurisdiction, particularly those stated only upon information and belief, are insufficient to establish that the court has personal jurisdiction over the defendant."  *Guo Jin v. EBI, Inc.*, No. 05 Civ. 4201, 2008 WL 896192, at *2 (E.D.N.Y. March 31, 2008) (internal quotation marks and citation omitted).

Plaintiffs fail to meet the final condition for jurisdiction under C.P.L.R. § 302(a)(3)(ii) for similar reasons.  Plaintiffs do not assert that the "hundreds" of referrals Attorney Defendants have received resulted in a lucrative out-of-state client base.  Even if they had done so, their claims would be insufficient to establish personal jurisdiction because, as the Court has explained, they are based only on "information and belief."  Moreover, the fact that Invents referred Plaintiffs to Attorney Defendants, on one occasion each, does not show that Attorney Defendants "derived substantial revenue from interstate or international commerce."  *See Ingraham*, 90 N.Y.2d at 600 (existence of "nothing more than an informal, even if frequent, referral practice" to an out-of-state physician does not meet "substantial revenue" requirement).

Plaintiffs have not satisfied the fourth and fifth conditions required for jurisdiction under C.P.L.R. § 302(a)(3)(ii).  Accordingly, the Court may not properly exercise personal jurisdiction over Attorney Defendants.  Since long-arm jurisdiction is not authorized by New York's statutory scheme, the Court need not address federal due process concerns.  Moreover, because Plaintiffs have not made a *prima facie* showing of jurisdiction, the Court declines to direct the parties to engage in jurisdictional discovery.  *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) ("In deciding a pretrial motion to dismiss for lack of personal

jurisdiction a district court has considerable procedural leeway."); *see also* 4 Wright & Miller, Fed. Prac. & Proc. Civ. § 1067.6 (4th ed.) ("A court need not hold an evidentiary ruling to allow the plaintiff to present evidence supporting personal jurisdiction when the specific allegations of the plaintiff even if fully credited do not make a *prima facie* showing of jurisdiction.").

In light of the foregoing, the Court grants Attorney Defendants' motions to dismiss for lack of personal jurisdiction.  Since the defects identified by the Court may be curable, the dismissal of Plaintiffs' claims against Attorney Defendants is without prejudice and with leave to re-plead.

**b.  Request for Attorneys' Fees**

Attorney Defendants seek an award of attorneys' fees pursuant to Rule 130-1.1 of Title 22 of the New York Codes, Rules and Regulations ("22 NYCRR 130-1.1"), and pursuant to the AIPA and N.Y. GBL § 349.  Courts in this jurisdiction have found that 22 NYCRR 130-1.1 is "inapplicable to an attorney's conduct in federal court [because] [s]uch conduct is governed by Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927." *Jewelers Vigilance Comm., Inc. v. Vitale Inc*., No. 90 Civ. 1476, 1997 WL 582823, at *1, 5 (S.D.N.Y. Sept. 27, 1997).  Further, while the AIPA and N.Y. GBL § 349 provide for an award of attorneys' fees to the prevailing party, a dismissal without prejudice for lack of personal jurisdiction does not render Attorney Defendants the prevailing parties. *See Dattner v. Conagra Foods, Inc.*, 458 F.3d 98, 100 (2d Cir. 2006) (whether a party is a "prevailing party" is a question of law to be decided by the Court); *Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, No. 11 Civ. 7268, 2013 WL 6223596, at *3 (S.D.N.Y. Dec. 2, 2013), *report and recommendation adopted*, No. 11 Civ. 7268, 2014 WL 1325748 (S.D.N.Y. Mar. 17, 2014) (collecting cases where district court found dismissal for lack of personal jurisdiction does not make defendant the "prevailing party").

Accordingly, Attorney Defendants' request for attorneys' fees is denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to remand this case is DENIED.  The motion of Defendants Invention Submission Corporation d/b/a InventHelp, Technosystems Consolidated Corp., Technosystems Service Corp., Western Invention Submission Corp., Universal Payment Corp., Intromark Incorporated, and Robert J. Susa to dismiss the Amended Complaint or transfer venue is GRANTED to the extent that the Amended Complaint is dismissed as against those Defendants without prejudice, and with leave to re-plead, for lack of subject matter jurisdiction, and the motion is otherwise DENIED.  The motions of Defendants Ashkan Najafi, RG Patent Consulting LLC, and Rachel GILBOY to dismiss the Amended Complaint are GRANTED to the extent that the Amended Complaint is dismissed as against those Defendants without prejudice, and with leave to re-plead, for lack of personal jurisdiction. Plaintiffs may file a Second Amended Complaint consistent with this Opinion on or before July 2, 2020.  If Plaintiff elects to file a Second Amended Complaint, Defendants are directed to file their answers or otherwise respond by August 3, 2020.  The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 127, 136, 145 & 149.

Dated:     June 2, 2020
         White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge